In The United States District Court
For The Middle District Of Florida
Tampa Division

**Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill, Linda Gledhill, Barb Griffin, Joette Kelly, Cathy Liska,** and **Schalamar Creek Mobile Homeowner's Association, Inc.,** on behalf of themselves, the class of current and former mobile homeowners in the Park and all others similarly situated,

        Plaintiffs,

Vs.

**Steven Adler, Lorraine DeMarco, R. Scott Provost, Charles Crook, Marti Newkirk, Murex Properties, L.L.C., The Northwestern Mutual Life Insurance Company, Randall Knapp, Osprey Links, LLC, Schalamar GP, Inc., Richard Lee, David Eastman,** and **Lutz, Bobo & Telfair, P.A.,** d/b/a Lutz, Bobo, Telfair, Eastman & Lee, f/k/a Lutz, Webb & Bobo, P.A.,7

        Defendants.

_____/

Case No. 8:19-cv-00291-JSM-AEP

**Class Action Representation And Demand For Jury Trial Injunctive Relief Sought**

## AMENDED COMPLAINT

Plaintiffs Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill, Linda Gledhill, Barb Griffin, Joette Kelly, Cathy Liska and Schalamar Creek Mobile Homeowner's Association, Inc., as putative class representatives on behalf of themselves, the class of current and former mobile homeowners in the Schalamar Creek Golf Mobile

Home Park and all others similarly situated, by and through the undersigned counsel, bring this Amended Complaint against Defendants Steven Adler, an individual, Lorraine DeMarco, an individual, R. Scott Provost, an individual, Charles Crook, an individual, Marti Newkirk, an individual, Murex Properties, L.L.C., a Florida Limited Liability Company, The Northwestern Mutual Life Insurance Company, a Foreign (Wisconsin) Corporation, Randall Knapp, an individual, Osprey Links, LLC, a Florida Limited Liability Company, Schalamar GP, Inc., a Florida Corporation, Richard Lee, an individual, David Eastman, an individual, and Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Lee, f/k/a Lutz, Webb & Bobo, P.A., a Florida Corporation, collectively referred to herein as "Defendants," and alleges:

## PARTIES

1.      Plaintiffs Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill, Linda Gledhill, Barb Griffin, Joette Kelly, and Cathy Liska are individuals who reside in Florida and bona fide mobile home owners who rent or lease the lot underneath their home for residential use within the Schalamar Creek Golf Mobile Home Park ("Park") in Polk County, Florida. Plaintiffs Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill, Linda Gledhill, Barb Griffin, Joette Kelly, Cathy Liska are the putative class representatives and act on behalf of themselves, the class of current and former mobile homeowners in the Park and all others similarly situated. They are collectively referred to herein as the "Individual Plaintiffs," "Plaintiff mobile home owners," or the "putative class representatives."

2.      Plaintiff Schalamar Creek Mobile Homeowner's Association, Inc., ("Schalamar HOA") is a Florida not-for-profit corporation with its principal place of business located at 4500 US Highway 92 East, Lot 1032, Polk County, Lakeland, Florida. Schalamar HOA is formed and operates in compliance with §§ 723.075 through 723.079, *Fla. Stat*. The Schalamar HOA is the putative class representative for injunctive and/or

declaratory relief only under Count Five of this Amended Complaint and acts on behalf of itself, the class of current and former mobile homeowners in the Park who seek injunctive and/or declaratory relief under Count Five of this Amended Complaint and all others similarly situated. It is referred to herein as the "Schalamar HOA," or the "putative class representative for injunctive and/or declaratory relief."

3.     Defendant Steven Adler is an individual who currently resides in Lee County, Florida. Steven Adler is identified as President, CEO, Owner, and the managing member of Defendant Murex Properties, L.L.C., in annual filings with the Florida Secretary of State from 2004 to the present. His principal place of business is located at 12629 New Brittany Blvd., Bldg. 16, Lee County, Fort Myers, Florida. In documents filed with the Florida Secretary of State, Steven Adler has also been identified as a partner and investor with Defendant The Northwestern Mutual Life Insurance Company from 2004 until the present. Adler, in his individual capacity and as the managing member of Defendant Murex Properties, L.L.C., is an operator of the Park as he and Defendant Murex Properties, L.L.C., have been delegated by Defendant The Northwestern Mutual Life Insurance Company authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park. Adler has previously held leadership positions for Florida Manufactured Housing Association, Inc., the Florida mobile home park owners' trade and lobbying association. Adler is the current membership committee chair for the Florida Manufactured Housing Association, Inc.

4.     Defendant Lorraine DeMarco is an individual who currently resides in Polk County, Florida. Lorraine DeMarco is an employee and the Home Sales Manager of Defendant Murex Properties, L.L.C., at the Park. Lorraine DeMarco is an operator of the Park as she has been delegated by Defendants The Northwestern Mutual Life Insurance Company and Murex Properties, L.L.C., authority to act as the park owner in matters

relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

5.      Defendant R. Scott Provost ("Scott Provost") is an individual who currently resides in Polk County, Florida. Scott Provost is an employee and, in his LinkedIn.com Internet web-profile, is identified as the Regional Vice President of Defendant Murex Properties, L.L.C., at the Park since July 2017 to the present. Provost was formerly the Home Sales Manager for Defendant Murex Properties, L.L.C., at the Park. Scott Provost is an operator of the Park as he has been delegated by Defendants The Northwestern Mutual Life Insurance Company and Murex Properties, L.L.C., authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

6.      Defendant Charles Crook ("Charles Crook") is an individual who currently resides in Pinellas County, Florida. Charles Crook is formerly an employee and, in his LinkedIn.com Internet web-profile, is identified as the Vice President of Defendant Murex Properties, L.L.C., from February 2015 to August 2017 at the Park. Charles Crook was an operator of the Park as he has been delegated by Defendants The Northwestern Mutual Life Insurance Company and Murex Properties, L.L.C., authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park. Charles Crook's LinkedIn.com Internet web-profile described his responsibilities as Vice President of Defendant Murex Properties, L.L.C., to include "... the day to day management of a nationwide portfolio of manufactured home communities [and c]omplete P & L responsibility including sales, marketing, operations, customer service, construction and asset management."

7.      Defendant Marti Newkirk is an individual who currently resides at 8633 Plantation Ridge, Polk County, Lakeland, Florida. Newkirk is formerly an employee and the Park Manager from May 2005 to December 2017 for Defendant Murex Properties,

L.L.C. Marti Newkirk was an operator of the Park as she has been delegated by Defendants The Northwestern Mutual Life Insurance Company and Murex Properties, L.L.C., authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

8.      Defendant Murex Properties, L.L.C. ("Murex Properties"), is a Foreign (Michigan) limited liability company with its principal place of business located at 12629 New Brittany Blvd., Bldg. 16, Lee County, Fort Myers, Florida and is also engaged in business at the Park. Murex Properties is directly or indirectly owned by Steven Adler. He is identified as President, CEO, Owner, and the managing member of Murex Properties in annual filings with the Florida Secretary of State from 2004 to the present. Murex Properties is an operator of the Park as it has been delegated by Defendant The Northwestern Mutual Life Insurance Company authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

9.      Defendant The Northwestern Mutual Life Insurance Company ("Northwestern Mutual"), is a Foreign (Wisconsin) corporation with its principal place of business located at 720 East Wisconsin Ave., Milwaukee, Wisconsin since 1957 and is also engaged in business at the Park. Northwestern Mutual owns the Park directly or indirectly (through its controlled subsidiary, Defendant Osprey Links, LLC ).

10.     Defendant Randall Knapp is an individual who currently resides in Polk County, Florida at 361 Denton Ave., Auburndale, Florida. Randall Knapp owned the Park directly or indirectly (through his controlled entities) prior to the sale of the Park to Northwestern Mutual. Randall Knapp is identified in annual filings with the Florida Secretary of State as operating entities with their principal place of business located at 361 Denton Ave., Polk County, Auburndale, Florida, including as Director, and former

President/Treasurer/Secretary of Defendant Schalamar GP, a Florida corporation since 1999 (*dissolved September 22, 2017*). The corporation was capitalized with 1,000 shares of common stock at $1.00 par value per share or a total, of $1,000.00;

11.     Defendant Osprey Links, LLC ("Osprey Links"), f/k/a Osprey Links Joint Venture (a Florida general partnership), according to annual filings with the Florida Secretary of State, is a subsidiary of Northwestern Mutual, and is a converted Foreign (Delaware) limited liability company with its principal place of business located at 720 East Wisconsin Ave., Milwaukee, Wisconsin, since 2008. Osprey Links owns the Park directly or indirectly (as a subsidiary controlled by Northwestern Mutual).

12.     Defendant Schalamar GP, Inc. ("Schalamar GP"), is a Florida corporation since 1999 (dissolved September 22, 2017), with its principal place of business located at 361 Denton Ave., Polk County, Auburndale, Florida. Randall Knapp is identified in annual filings with the Florida Secretary of State as Director, and former President/Treasurer/ Secretary of Schalamar GP since 1999. The corporation was capitalized with 1,000 shares of common stock at $1.00 par value per share or a total, of $1,000.00. Schalamar GP owned and/or operated the Park directly or indirectly (through Randall Knapp's control) prior to the sale of the Park to Northwestern Mutual. .

13.     Defendant Richard Lee is an individual who currently resides in Leon County, Florida. Lee is a licensed Florida lawyer since 1980, a partner and/or an employee or shareholder of Defendant Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Lee, with his principal place of business located at 2155 Delta Blvd., Suite 201B, Tallahassee, Florida. Lee, a partner and/or principal of Lutz Bobo Law Firm, is a founding or participating member and lobbyist for the Florida Manufactured Housing Association, Inc.

14.     Defendant David Eastman is an individual citizen of Florida who resides in Leon County, Florida. Eastman is a licensed Florida lawyer since 1990, a partner and/

or an employee or shareholder of Defendant Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Lee, with his principal place of business located at 2155 Delta Blvd., Suite 201B, Tallahassee, Florida. Eastman, a partner and principal of Lutz Bobo Law Firm, is General Counsel and a founding member and lobbyist for the Florida Manufactured Housing Association, Inc.

15.     Defendant Lutz, Bobo & Telfair, P.A. ("Lutz Bobo Law Firm"), d/b/a Lutz, Bobo, Telfair, Eastman & Lee, f/k/a Lutz, Webb & Bobo, P.A., is a Florida corporation with its principal place of business located at 2155 Delta Blvd., Suite 201B, Leon County, Tallahassee, Florida and also at One Sarasota Tower, Two North Tamiami Trail, Fifth Floor, Sarasota County, Florida. Lutz Bobo Law Firm is a founding member and lobbyist for the Florida Manufactured Housing Association, Inc.

## JURISDICTION AND VENUE

16.     This action is brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961, *et seq.*, and various other state common law doctrines or statutes. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331.

17.     Plaintiffs' claims brought under Florida law are so related to Plaintiffs' federal claims, over which the Court has original jurisdiction, that they form part of the same case or controversy. Under Article III of the United States Constitution, the Court has supplemental jurisdiction over Plaintiffs' related state common law and statutory claims under to 28 U.S.C. § 1367. The Plaintiffs seek damages and declaratory relief under to 28 U.S.C. § 2201.

18.     Under § 48.193, *Fla. Stat.*, this Court has personal jurisdiction over each defendant because, among other reasons, each defendant operates, conducts, engages in, or carries on a business or business venture in the State of Florida or has an office in the State of Florida or has committed tortious acts within the State of Florida.

19.     In the alternative, under 18 U.S.C. § 1965(a), this Court has personal jurisdiction over each defendant because each defendant resides, is found, has an agent, or transacts his/her affairs in this district.

20.     To the extent any defendant is found not to be subject to this Court's personal jurisdiction under § 48.193, *Fla. Stat.*, and/or 18 U.S.C. § 1965(a), this Court may exercise personal jurisdiction over such defendant(s) under 18 U.S.C. § 1965(b) because the ends of justice require that the Court exercise personal jurisdiction over any defendant who claims not to have sufficient minimum contacts with the forum. Defendants engaged in a multi-district conspiracy to defraud Plaintiffs. The Court has personal jurisdiction over most, if not all, of the alleged co-conspirators, and there is no other district that may exercise personal jurisdiction over all Defendants.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to these claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## CLASS REPRESENTATION ALLEGATIONS

22.     Plaintiffs Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill, Linda Gledhill, Barb Griffin, Joette Kelly, Cathy Liska, and Schalamar HOA bring this class action on behalf of themselves individually and all others similarly situated, pursuant to *Fed. R. Civil P.* 23.

23.     The proposed Class consists of all persons who are or were mobile homeowners in the Park from 2009 to the present and have identical, or substantially similar underlying mobile home lot rental agreements with identical or substantially similar restrictions or sub-parts requiring, *inter alia*:

-

- the forced surrender of the Plaintiff homeowners' resale purchasers' right to assume the resale sellers' less expensive lot rental prospectus (denoted P1 through P5) and instead require the Plaintiff homeowners to assume and adopt a later P6 prospectus requiring significantly higher lot rental and an increased rent escalation percentage;[1]

- payment by the Plaintiff homeowners of fraudulent, excessive, and improperly calculated ad valorem tax pass-ons resulting from the fraudulent 2011 sale and purchase of the Park by the Defendants and currently illegal and fraudulent inclusion of ad valorem tax pass-ons related to income producing portions of the Park clubhouse, a bank, a restaurant, and RV storage lot;

24.     The Class includes those Plaintiff current or former mobile homeowners who have been forced or expect to be forced to be fraudulently required to surrender of the resale purchasers' right to assume the resale sellers' pre-existing prospectus.

25.     The Class includes those Plaintiff current or former mobile homeowners who have suffered retaliation or expect to suffer retaliation by the Defendants as a result of their and their Schalamar HOA's criticism of the Defendants' insistence that all listing or purchasing homeowners assume and adopt the P6 prospectus.

26.     The Class includes those Plaintiff current or former mobile homeowners who have paid the excessive ad valorem pass-ons and the perpetual sanitation costs or who received threats of liens or eviction or restrictions of their use of Park facilities or amenities for their nonpayment.

27.     The Class includes those elderly and disabled Plaintiff current or former mobile homeowners who have suffered the deprivation or expect to suffer the deprivation

---

1       In pertinent part, the P3 prospectus restricts lot rental increases to the greater of $5.00 or CPI. The P6 prospectus restricts lot rental increases to the greater of 3% or CPI.

of a handicap accessible Park clubhouse, facilities, golf course, and common areas.

28.     Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that market or sell homes in the Park, the judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

29.     This action is properly brought as a class action because:

(a)     The proposed Class is so numerous and geographically dispersed throughout the United States and Canada that the joinder of all Class Members is impracticable. The number of Class members is approximately 1,000 persons, and is expected to grow as homes in the Park are resold. Many of the Class Members are seasonal residents of Florida and reside in other portions of the United States and Canada during the remainder of the year;

(b)     The disposition of Plaintiffs' and putative Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)     The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class Member were infringed or violated in the same or similar fashion and uniform manner;

(d)     There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include but are not limited to:

1.     Whether Defendants violated 18 U.S.C. § 1962;

2.     Whether Defendants violated Title 3 of the ADA - 42 U.S.C. § 12181 *et seq.*;

3.     Whether Defendants violated the Florida Mobile Home

Act, Chapter 723, *Fla. Stat.*;

4.      Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

5.      Whether Plaintiffs and Class Members are entitled to an award of treble damages, punitive damages, attorneys' fees and costs; and

6.      Whether Plaintiffs and Class Members are entitled to equitable relief, and if so, the nature of such relief.

(e)      Plaintiffs' claims are typical of the claims of the members of the proposed Class. Plaintiffs and Class Members have been injured by the same wrongful practices of Defendants. Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f)      Plaintiffs will fairly and adequately protect the interests of the Class in that they have no interests antagonistic to those of the other Class Members, and Plaintiffs have retained an attorney experienced in consumer class actions and complex litigation as counsel;

(g)      A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

1.      Given the size of individual Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

2.      This action will promote an orderly and expeditious administration and adjudication of the proposed Class

claims, economies of time, effort and resources will be
fostered and uniformity of decisions will be insured;

3.      Without a class action, Class Members will continue to
suffer damages, and Defendants' violations of law will
proceed without remedy while Defendants continue to reap
and retain the proceeds of their wrongful conduct; and

4.      Plaintiffs know of no difficulty that will be encountered in
the management of this litigation which would preclude
class certification.

30.     Defendants and their agents had, or have access to, address information for
the Class Members, which may be used for the purpose of providing notice of the class
action.

31.     Plaintiffs Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill,
Linda Gledhill, Barb Griffin, Joette Kelly, and Cathy Liska seek damages, equitable relief,
attorneys' fees, and costs on behalf of the Class on grounds generally applicable to the
entire proposed Class.

32.     Plaintiff Schalamar HOA seeks equitable relief only under Count Five of
this Amended Complaint, attorneys' fees, and costs on behalf of the Class on grounds
generally applicable to the entire proposed Class.

## BACKGROUND

**DEFENDANTS' CONCERTED DECEPTIVE SCHEME:**

**Purchase of the Park Under an "Unsolicited Offer"**

33.     In early April 2011, Defendants Steven Adler, Randall Knapp, and Murex Properties announced the intended purchase of the Park and entities owned by Randall Knapp through Northwestern Mutual's Florida subsidiary, Defendant Osprey Links, for $57.7 million. On April 18, 2011 during a meeting between Defendant Steven Adler, John Jacobs (described as a long-term friend of Steven Adler and/or Randall Knapp), and a Director of Field Production for the investment arm of Defendant Northwestern Mutual, Steven Adler, John Jacobs, and Randall Knapp represented to the Plaintiff Schalamar HOA that the purchase of the Park and adjacent private golf course had been arranged through an "unsolicited offer."

34.     The offer to purchase the Park was not "unsolicited." The purchase was arranged through brokers, agents, and/or attorneys for Randall Knapp, Northwestern Mutual and its Florida subsidiary, Osprey Links. Randall Knapp, Steven Adler, Northwestern Mutual, Osprey Links, and Murex Properties concealed that the offer was solicited; the consequence of which frustrated the Schalamar HOA's statutory right of first refusal to match the contract terms and conditions under § 723.071(1), *Fla. Stat.*

35.     During the April 18, 2011 meeting Steven Adler and John Jacobs represented to the Schalamar HOA that Steven Adler, Murex Properties and Northwestern Mutual agreed that they would not change the prospectus for existing residents. During the meeting, Steven Adler, Murex Properties and Northwestern Mutual caused the Schalamar HOA to execute a settlement agreement requiring  the Schalamar HOA recite a factual and legal misrepresentation that Steven Adler, Murex Properties and Northwestern Mutual had purchased the Park from Randall Knapp and his controlled

entities under an unsolicited offer and otherwise had complied with § 723.071(1), *Fla. Stat.*

36.     Randall Knapp, Steven Adler, Northwestern Mutual, Osprey Links, and Murex Properties concealed the true circumstances and nature of the sale and purchase of the Park from the Plaintiff mobile home owners and the Schalamar HOA through the date of the filing of this Amended Complaint.

37.     In 2013, the Polk County Property Appraiser's Office raised the taxable value of them Park from $24. 9 million to $46. 9 million: an 88.4-percent increase. Dan Titus, a longtime resident of the Park, was quoted in a February 13, 2013 Lakeland Ledger newspaper article that the increase in tax valuation amounts to about an $31-a-month increase in ad valorem tax pass-ons to all of the Plaintiff mobile home owners.

**P6 Prospectus: "Only to be given to purchasers of new homes"**

38.     In various Park clubhouse meetings with the Schalamar HOA and the Plaintiff mobile home owners during 2015 to 2016, Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties reassured the Plaintiff homeowners and the Schalamar HOA that the higher rent and expense P6 prospectus would only be issued to purchasers of new homes in the Park and ***not to purchasers of resale homes.***

39.     In 2016 the Plaintiff homeowners and the Schalamar HOA learned that the P6 prospectus was actually being presented to resale home purchasers by Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties as the only lawfully valid prospectus for any resale home in the Park.

40.     Charles Crook (then a Vice President of Murex) stated at a 2016 weekly sales meeting in the Park Clubhouse in the presence of Murex Properties sales agent, Plaintiff Nick Van Lith and other Murex Properties sales agents or employees of the

Murex Properties sales office that: "Our lawyers are not sure it's legal or ethical to change

(to a P6), ... but we are going to do it anyway."

**Resale Purchasers Must Sign Assumption of Lease and Prospectus**

41.     The Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles

Crook, Marti Newkirk and Murex Properties provided all elderly prospective resale

homeowners with purportedly legal "assumption of lease" or other documents which had

the effect of adoption of the P6 prospectus. The resale purchasers were hurriedly directed

- with little or no explanation - to sign the documents which were prepared by Defendants

Richard Lee, David Eastman, and the Lutz Bobo Law Firm. (Exh. A is adopted**)**. These

documents illegally mis-characterize the existing lease as "expired" and the assumption

of the P6 prospectus as a "new" lease. The Defendants Steven Adler, Lorraine DeMarco,

Scott Provost, Charles Crook, Marti Newkirk and Murex Properties told most Plaintiff

mobile home owners they had to assume or adopt the P6 prospectus in order to "transfer

the lease″ or even to list their home for resale with Murex Properties.

42.     Defendants Richard Lee, David Eastman, and the Lutz Bobo Law Firm

drafted and/or co-authored the assumption of lease and prospectus receipt documents

used by the Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook,

Marti Newkirk and Murex Properties which incorporated fraudulent misrepresentations

regarding the Plaintiffs' legal right to assume the resale seller's lower expense prospectus.

Defendants Richard Lee, David Eastman, and the Lutz Bobo Law Firm acted with

fraudulent intent as the legal opinions they expressed were not honestly held but only

expressed to advance the scheme. Defendants Richard Lee, David Eastman, and the Lutz

Bobo Law Firm were aware of the fraud and cloaked the forced surrender of the right to

assume along with a feigned acceptance of the increased ad valorem tax pass-ons with an

air of legitimacy. The documents were written in a dizzying and nearly incomprehensible

use of legalese. In this manner, Defendants Richard Lee, David Eastman, and the Lutz Bobo Law Firm substantially assisted in the commission of the fraud.

**Prospectus Receipt Violates § 723.011(5),** *Fla. Stat.*

43.      More specifically, Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties required the prospective resale purchasers to sign an unnecessary and illegal "prospectus receipt" document prepared by Defendants Richard Lee, David Eastman, and the Lutz Bobo Law Firm, which indicates much more than permitted by § 723.011(5), *Fla. Stat.*, including that:

a.      the Schalamar HOA has "agreed" with the Defendants' interpretation of the P6 prospectus;

b.      the "binding" nature of the P6 prospectus;

c.      the applicability of the P6 prospectus to resale homes;

d.      an incorporation of an extensive provision authorizing ad valorem tax pass-ons and "Taxes and Governmentally Related Fees;" and

e.      how rent increases and late fees are calculated.

All of above violates § 723.011(5), *Fla. Stat.*   (the receipt " ... shall indicate *nothing more than that the documents identified herein have been received* by the mobile home owner ....") (Exh. A is adopted) (Emphasis Added).

44.      The prospectus receipt documents prepared by Defendants Richard Lee, David Eastman, and the Lutz Bobo Law Firm falsely represent the law and is not the normal and standard provision of legal services.

45.      Most elderly prospective resale homeowners were not provided with a copy of the P6 prospectus prior to or even contemporaneous with the execution of the lot rental agreement. Most were not provided a copy of the prospectus until weeks or months after closing. Many homeowners discovered that their forced adoption of the P6 prospectus caused or will cause a subsequent significantly higher compounded lot rent

and ad valorem tax pass-ons.

**Cash Incentives to Sales Agents and Sellers to Assume or Adopt P6 Prospectus**

46.     Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties misrepresented the proper resale prospectus and manipulated prospective resale purchasers away from the lower rent and expense prospectus in favor of the higher expense P6 prospectus using multi-year "rent discount coupons," $250 cash incentive awards to resale sellers, and other incentives (i.e., golf shop or restaurant coupons) to adopt the P6 prospectus.

47.     From 2015 to December 2017 Murex Properties policy was to pay a commission or bounty of $200 to sales agent Defendant Marti Newkirk on each resale with an assumption or adoption of a P6 prospectus.

48.     Monthly lot rent discount coupons awarded by Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties as an incentive for the assumption of the P6 prospectus by prospective purchasers of resale mobile homes in the Park are typically multi-year, offering approximately $1,500 annual savings in lot rent and are executed in writing using a printed form titled "Schalamar Creek New Community Member Bonus Program - 2 Years Lot Rental Coupon "P6 Program - Lot Rent Coupon" and may indicate a completed checkbox for an additional $1,000 golf membership credit. (Exh. B is adopted)

49.     Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties typically offered a $250 gift card (redeemable in the Park restaurant or golf pro shop) to the prospective seller of a resale mobile home in the Park to "adopt" the P6 prospectus in advance of their sale. When questioned by anxious Plaintiff resale sellers about the propriety of imposing a significantly higher lot rent and expense prospectus the Defendants retort that the

sellers should be unconcerned since the purchasers get rent discount coupons and golf membership credits.

**"Don't Discuss the P6 Prospectus!"**

50.     Beginning in 2015 and continuing to the present, Murex Properties sales agents were and are instructed by Defendants Lorraine DeMarco, Scott Provost (after Provost's arrival in July 2017), Charles Crook (until Crook's departure in August 2017), Marti Newkirk (until Newkirk's departure in December 2017) and Murex Properties **to not discuss the P6 with either buyers or sellers.** Instead, sellers were to be referred to Lorraine DeMarco, Scott Provost, or Marti Newkirk immediately, who would then "handle" the buyers or sellers to get them to sign or adopt a P6 by:

- Convincing them to just sign "these" required documents to list their homes or;

- If they were reluctant, to offer them a form of incentive (cash, gift card, golf course membership, etc.) and to assure them that this did not affect the sale because the buyer was receiving rent discount "coupons" over a period of years.

51.     In December 2016, a meeting between Murex Properties, Lorraine DeMarco, Charles Crook, Marti Newkirk and Murex sales agents was held in the Sales Office in the Park. Attending was Nicholas Van Lith, Don Gledhill, Shirley Hillsgrove, Dottie Reilly, Betty Payton, and Jerry Van Houten. Charles Crook announced that there were sales agents who were telling resale purchasers not to sign to adopt or assume  the P6 prospectus. Defendant Crook told the sales agents that they were not to tell resale purchasers they shouldn't sign the P6. Lorraine DeMarco added that she wanted the P6 prospectus to be adopted or assumed explaining, "That's how I make my money."

52.     In Fall 2016 clubhouse meetings between Defendants Lorraine DeMarco,

Charles Crook, Marti Newkirk and Murex Properties, Plaintiff mobile home owners and the Schalamar HOA inquired about the lawfulness or propriety of the P6 prospectus as applied to resale purchasers. Charles Crook told the Plaintiff mobile home owners and the Schalamar HOA to: "Mind your own business ... that is OUR business."

53.     When questioned by prospective resale purchasers about the assumption of existing lower rent and expense Pl, P2, P3, or P5 prospectuses, Defendants Lorraine DeMarco, Charles Crook, Marti Newkirk and Murex Properties told the purchasers that they were "simply" required to present the *original* signed copy of the earlier prospectus issued to the seller or the purchasers would not be allowed to assume the earlier prospectus.

**Mail and Wire Fraud**

54.     Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their co-conspirators/agents) engaged in a scheme to unlawfully defraud Plaintiff mobile home owners of their money or property through the fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus. Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their co-conspirators/agents) knowingly devised or knowingly participated in a scheme or artifice to defraud Plaintiff mobile home owners or to obtain the money or property of Plaintiff mobile home owners by means of false or fraudulent pretenses, representations, material omissions, or promises.

55.     Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their co-conspirators/agents) could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

56.     In particular, Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their co-conspirators/agents) knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia,* the assumption of lease and prospectus receipt documents used by the Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties which incorporated fraudulent representations regarding the Plaintiff mobile home owners' legal right to assume the resale seller's lower expense prospectus, invoices for payment of consequent increased lot rental and payment of excessive ad valorem tax pass-ons from the 2011 sale by Randall Knapp and purchase of the Park by Northwestern Mutual and Osprey Links.

57.     Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their co-conspirators/agents) acting singly and in concert, personally or through their agents, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud the Plaintiff mobile home owners within the meaning of 18 U.S.C. §§ 1341 and 1343.

58.     It is not possible for Plaintiff mobile home owners to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the exclusive control and within the exclusive knowledge of Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their co-conspirators/agents) other presently unknown individuals. Plaintiff mobile home owners and the Schalamar HOA know that Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their co-conspirators/agents) have communicated using the U.S. Postal service with:

a.     regulators in the Florida Department of Business and Professional
Regulation related to the approval, recordation, and dissemination
of the P6 Prospectus;

b.     the putative class of mobile home owners related to initial sales and
closing documents (including Assumption of Lease and Prospectus
Receipt) (Exh. C is adopted);

c.     the putative class of mobile home owners related to ongoing annual
rent increases and increased ad valorem tax pass-ons.

Documents related to those communications using the U.S. Postal service are
in the control and custody of the Defendants Steven Adler, Lorraine DeMarco, Scott
Provost, and Murex Properties (and their co-conspirators/agents) and are expected to be
the focus of discovery.

59.     Furthewr, by way of example, however, Defendants Steven Adler, Lorraine
DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties (and their
co-conspirators/agents) specifically used the U.S. Postal Service or interstate wires or
caused the U.S. Postal Service or interstate wires to deliver each and every telephone call,
email, and letter described in paragraphs (*supra*, ¶¶ 55-65).

60.     Upon information and belief, some of the wire communications described
above occurred between persons in the same state but crossed interstate borders by reason
of the technology and other mechanisms used to transmit the communication.

61.     Each and every use of the U.S. Postal Service or interstate wires described
above was committed by Defendants Steven Adler, Lorraine DeMarco, Scott Provost,
Charles Crook, Marti Newkirk and Murex Properties and their co-conspirators/agents
with the specific intent to defraud Plaintiff mobile home owners or for obtaining the
money or property of Plaintiff mobile home owners by means of false or fraudulent
pretenses, representations, material omissions or promises. Defendants Steven Adler,

Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties
and their co-conspirators'/agents' acts of mail and wire fraud in violation of 18 U.S.C.
§§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B) or
"criminal activity" as defined by *Fla*. *Stat.* § 772.102(b).

62.     Plaintiff mobile home owners purchased their mobile homes and entered
into a long-term lot rental agreement not knowing that the Defendants Steven Adler,
Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties
fraudulently forced surrender of the Plaintiff mobile home owners' resale purchasers'
right to assume the resale sellers' prospectus, and they were forced to pay a higher lot
rental, and ad valorem tax pass-on.

63.     Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles
Crook, Marti Newkirk and Murex Properties' scheme to defraud was designed to
victimize elderly homebuyers. As such, Defendants Steven Adler, Lorraine DeMarco,
Scott Provost, Charles Crook,  Marti Newkirk and Murex Properties intended to take
advantage of Plaintiff mobile home owners' perceived ignorance or gullibility and
intended to prey on their' infirmities.

64.     Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles
Crook, Marti Newkirk and Murex Properties' scheme further deprives the Plaintiff
mobile home owners of their intangible right to honest services under The Florida Mobile
Home Act, in which the mails were caused to be used to defraud and deceive the Plaintiff
mobile home owners through materially false and fraudulent misrepresentations and
omissions. The Plaintiff mobile home owners and Defendants Steven Adler, Lorraine
DeMarco, Scott Provost, Charles Crook, Marti Newkirk and Murex Properties have a
trusting relationship in which one party acts for the benefit of another and induces the
trusting party to relax the care and vigilance which it would ordinarily exercise.

**Claims**

**Count One – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) – *Fla. Stat.* § 772.103(3) by Defendants Steven
Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall
Knapp, Richard Lee and David Eastman

***Adler-DeMarco-Provost-Crook-Newkirk-Knapp-Lee-Eastman Enterprise***

70.     Plaintiffs reallege and restate paragraphs 1 through 65.

71.     Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti

Newkirk, Randall Knapp, Richard Lee and David Eastman constituted an "enterprise,"

within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) &

772.10(3), in that they were "a group of individuals associated in fact" (hereinafter

referred to as the "*Adler-DeMarco-Provost-Crook-Newkirk-Knapp-Lee-Eastman*

*Enterprise*").

    a.     Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook,
Marti Newkirk, Randall Knapp, Richard Lee and David Eastman
shared the common purposes of developing Schalamar Creek Golf
Mobile Home Park and defrauding Plaintiffs of money or property
through the fraudulent forced surrender of the Plaintiffs' resale
purchasers' right to assume the resale sellers' prospectus.

    b.     Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook,
Marti Newkirk, Randall Knapp, Richard Lee and David Eastman
were related in that they are business partners and/or associates
and owed to Plaintiffs a duty of good faith and fair dealing under §
723.021, *Fla. Stat.*

    c.     The *Adler-DeMarco-Provost-Crook-Newkirk-Knapp-Lee-Eastman
Enterprise* possessed sufficient longevity for the members to carry

out their purpose(s) in that the *Adler-DeMarco-Provost-Crook-Newkirk-Knapp-Lee-Eastman Enterprise* existed from 2009 through 2019 (at a minimum).

d.  Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Adler-DeMarco-Provost-Crook-Newkirk-Knapp-Lee-Eastman Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 55 to 65).

**Alternative 1: *Murex Properties Enterprise***

72.  In the alternative to paragraph 71, between 2009 and 2019 (at a minimum), Murex Properties constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a legal entity.

a.  Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs

of Murex Properties through a pattern of racketeering activity
or criminal activity within the meaning of 18 U.S.C. §§ 1961(1),
1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) &
772.103(3). The pattern of racketeering activity or criminal activity
consisted of, but was not limited to, the acts of mail and wire fraud,
18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described
in paragraphs 55 to 65).

**Alternative 2:** *Schalamar Mobile Home Park Enterprise*

73.    In the alternative to paragraphs 71 and 72, Murex Properties,
Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm constituted
an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§
772.102(3) & 772.103(3), in that they were "a group of individuals associated in fact"
(hereinafter referred to as the "*Schalamar Mobile Home Park Enterprise*").

a.    Murex Properties, Northwestern Mutual, Osprey Links, Schalamar
GP, and Lutz Bobo Law Firm shared the common purposes of
defrauding Plaintiffs of money or property through the use of the
fraudulent forced surrender of the Plaintiffs' resale purchasers'
right to assume the resale sellers' prospectus.

b.    Murex Properties, Northwestern Mutual, Osprey Links, Schalamar
GP, and Lutz Bobo Law Firm were related in that they are all alter
egos of Steven Adler, Lorraine DeMarco, Scott Provost, Charles
Crook, Marti Newkirk, Randall Knapp, Richard Lee and David
Eastman.

c.    The *Schalamar Mobile Home Park Enterprise* possessed sufficient
longevity for the members to carry out their purpose(s) in that the

*Schalamar Mobile Home Park Enterprise* existed from 2009 through 2019 (at a minimum).

d.   Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Schalamar Mobile Home Park Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 55 to 65).

### Alternative 3: *Richard Lee Enterprise*

74.   In the alternative to paragraphs 71 and 72, between 2009 and 2019 (at a minimum), Richard Lee was an individual who constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3).

a.   Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Richard Lee through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) &

1962(c) and *Fla. Stat*. §§ 772.102(1), 772.102(4) & 772.103(3). The
pattern of racketeering activity or criminal activity consisted of,
but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§
1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs
55 to 65).

**Alternative 4: *Lutz Bobo Law Firm Enterprise***

75.　　In the alternative to paragraphs 71 and 72, between 2009 and 2019 (at a
minimum), the Lutz Bobo Law Firm constituted an "enterprise," within the meaning of
18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a
legal entity.

　　　　　　a.　　Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook,
Marti Newkirk, Randall Knapp, Richard Lee and David Eastman
are each a "person," within the meaning of 18 U.S.C. §§ 1961(3)
& 1962(c) and *Fla. Stat.* § 772.103, who individually conducted,
participated in, engaged in, and operated and managed the affairs of
the Lutz Bobo Law Firm through a pattern of racketeering activity
or criminal activity within the meaning of 18 U.S.C. §§ 1961(1),
1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) &
772.103(3). The pattern of racketeering activity or criminal activity
consisted of, but was not limited to, the acts of mail and wire fraud,
18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described
in paragraphs 55 to 65).

76.　　At all relevant times, the enterprises alleged in paragraphs 55 through 65
(*supra*) were engaged in, and their activities affected, interstate commerce and foreign
commerce.

77.     All of the acts of racketeering/crime described in paragraphs 55 to 65 were related so as to establish a pattern of racketeering activity or criminal activity, within the meaning of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), in that their common purpose was to defraud Plaintiffs of money and property through the use of the fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus; Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs were the victims of the acts of racketeering/crime; and/or the acts of racketeering/crime were otherwise interrelated by distinguishing characteristics and were not isolated events.

78.     All of the acts of racketeering described in paragraphs 55 to 65 were continuous so as to form a pattern of racketeering activity in that Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman engaged in the acts of racketeering/crime over a substantial period of time (i.e., from 2009 through 2019) and in that the acts of racketeering/crime have become the regular way in which Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman do business and, thus, threaten to continue indefinitely.

79.     As a direct and proximate result of, and by reason of, the activities of Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman, and their conduct in violation of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk,

Randall Knapp, Richard Lee and David Eastman; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees and reasonable experts' fees.

**Count Two – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) – *Fla. Stat.* § 772.103(3) by Defendants Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm

80.     Plaintiffs reallege and restate paragraphs 1 through 65.

*Corporate Enterprise*

81.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that they were "a group of individuals associated in fact" (hereinafter referred to as the "*Corporate Enterprise*").

    a.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm shared the common purposes of developing Schalamar Creek Golf Mobile Home Park and defrauding Plaintiffs of money or property through the use of the fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus;

    b.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm were related in that they are all controlled by Steven Adler, Lorraine DeMarco, Scott Provost,

Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman, who owe to Plaintiffs a duty of good faith and fair dealing under § 723.021, *Fla. Stat.*

c.     The *Corporate Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Corporate Enterprise* existed from 2009 through 2019 (at a minimum).

d.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Corporate Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud (as described in paragraphs 55 to 65).

**Alternative 1: *Murex Properties Enterprise***

82.     In the alternative to paragraph 81, between 2009 and 2019 (at a minimum), Murex Properties constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a legal entity.

a.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and

operated and managed the affairs of Murex Properties through
a pattern of racketeering activity or criminal activity within the
meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.*
§§ 772.102(1), 772.102(4) & 772.103(3). Said pattern of racketeering
activity or criminal activity consisted of, but was not limited to, the
acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.*
§§ 772.102(1)(b) (as described in paragraphs 55 to 65).

**Alternative 2:** *Schalamar Mobile Home Park Enterprise*

83.     In the alternative to paragraphs 81 and 82**,** Murex Properties,
Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm constituted
an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§
772.102(3) & 772.103(3), in that they were "a group of individuals associated in "fact"
(hereinafter referred to as the "*Schalamar Mobile Home Park Enterprise*").

a.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar
GP, and Lutz Bobo Law Firm shared the common purposes of
defrauding Plaintiffs of money or property through the use of the
fraudulent forced surrender of the Plaintiffs' resale purchasers'
right to assume the resale sellers' prospectus.

b.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar
GP, and Lutz Bobo Law Firm were related in that they are all alter
egos of Steven Adler, Lorraine DeMarco, Scott Provost, Charles
Crook, Marti Newkirk, Randall Knapp, Richard Lee and David
Eastman.

c.     The *Schalamar Mobile Home Park Enterprise* possessed sufficient
longevity for the members to carry out their purpose(s) in that the

*Schalamar Mobile Home Park Enterprise* existed from 2009 through 2019 (at a minimum).

d.    Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Schalamar Mobile Home Park Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

**Alternative 3:** *Richard Lee Enterprise*

84.    In the alternative to paragraphs 81 and 82, between 2009 and 2019, Richard Lee was an individual who constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3).

a.    Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Richard Lee through a pattern of activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4)

Page 32

& 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

**Alternative 4:** *Lutz Bobo Law Firm Enterprise*

85.     In the alternative to paragraphs 81 and 82 between 2009 and 2019 (at a minimum), the Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a legal entity.

> a.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the Lutz Bobo Law Firm through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). Said pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

86.     At all relevant times, the enterprises alleged in paragraphs 81 through 85 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

87.     All of the acts of racketeering described in paragraphs 55 to 65 were related

so as to establish a pattern of racketeering activity or criminal activity, within the meaning of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), in that their common purpose was to defraud Plaintiffs of money and property through the use of fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus, their common result was to defraud Plaintiffs of money and property through the use of fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus; Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; Plaintiffs were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

88.     All of the acts of racketeering described in paragraphs 55 to 65 were continuous so as to form a pattern of racketeering activity in that Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm engaged in the acts of racketeering/crime over a substantial period of time (i.e., from 2009 through 2019) and in that the acts of racketeering/crime have become the regular way in which Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm do business and, thus, threaten to continue indefinitely.

89.     As a direct and proximate result of, and by reason of, the activities of Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm and their conduct in violation of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm; to the extent Plaintiffs

incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Count Three – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(d) – *Fla. Stat.* § 772.103(4) by Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman

90.     Plaintiffs reallege and restate paragraphs 1 through 65.

91.     As alleged in Count One, one or more of the following individuals violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3): Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman. Any of these person(s) who violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3) are referred to as the "Violator(s)" for the remainder of this Count.

92.     Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or Eastman, conspired with the Violator(s) to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman intended to further an endeavor of the Violator(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

93.     Plaintiffs were injured by Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman's overt acts that are acts of racketeering/crime or otherwise unlawful under the RICO statute, which included (among other acts) mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

94.     As a direct and proximate result of, and by reason of, the activities of Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman, and their conduct in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Count Four – RICO Conspiracy; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(d) – *Fla. Stat.* § 772.103(4) by Defendants Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm

95.     Plaintiffs reallege and restate paragraphs 1 through 65.

96.     As alleged in Count One, the following individuals violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3): Steven Adler, Lorraine DeMarco, Scott Provost,

Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and David Eastman.

> **Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and/or Lutz Bobo Law Firm conspired with Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman**

97.     Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and/or Lutz Bobo Law Firm conspired with Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and/or Lutz Bobo Law Firm intended to further an endeavor of Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

> **Northwestern Mutual conspired with Richard Lee, David Eastman and/or Steven Adler**

98.     Northwestern Mutual conspired with Richard Lee, David Eastman and/or Steven Adler to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Northwestern Mutual intended to further an endeavor of Richard Lee, David Eastman and/or Steven Adler which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal

endeavor.

### Schalamar GP conspired with Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Richard Lee and/or David Eastman

99.     Schalamar GP conspired with Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Schalamar GP intended to further an endeavor of Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

### Schalamar GP and Osprey Links conspired with Richard Lee and/or David Eastman

100.     Schalamar GP and Osprey Links conspired with Richard Lee and/or David Eastman to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Schalamar GP and Osprey Links intended to further an endeavor of Richard Lee and/or David Eastman which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

101.     Plaintiffs were injured by Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm's overt acts that are acts of racketeering/

crime or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65 , *supra*).

102.     As a direct and proximate result of, and by reason of, the activities of Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm, and their conduct in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.103(3). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Steven Adler, Lorraine DeMarco, Scott Provost, Charles Crook, Marti Newkirk, Randall Knapp, Richard Lee and/or David Eastman; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Count Five – Denial of Rights of Access under Americans with Disabilities Act ("ADA") –** Violations of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) and related Florida statutes by Defendants Steven Adler, Murex Properties, and Northwestern Mutual

103.     Schalamar HOA is an incorporated mobile home owner association and the legal representative under § 723.075 (1), *Fla. Stat.*, of a class of 1,000 elderly current and former bona fide mobile home owners in the Park. The Park is an age 55 and older mobile home park with 876 mobile home lots (with a maximum of 1,000 lots expected).

104.     Schalamar HOA represents all of the mobile home owners in the Park "... in

all matters relating to the Florida Mobile Home Act." *See* §§ 723.075(1) and 723.076(1); *see also Rule* 1.222, *Fla. R. Civil P.*[2]

105.    The officers and directors of the Schalamar HOA have a fiduciary relationship to the home owners and must discharge their duties in good faith.[3]

106.    Schalamar HOA has the authority to initiate mediation and litigation on behalf of all of the home owners regarding an increase in lot rental amount, reduction in services or utilities, or change of rules and regulations.[4]

107.    If the park owner offers the Park for sale to the general public or receives an "unsolicited" offer to purchase the Park, the Schalamar HOA has a right to be notified of the offer, the price and the terms and conditions of sale, and permitted 45 days to execute a contract meeting the price, terms and conditions.[5] Schalamar HOA has the express statutory right to negotiate for, acquire, and operate the mobile home park on behalf of the mobile home owners.[6]

108.    Schalamar HOA realleges and restate paragraphs 1 through 12, 16-21, 22, 27-32.

---

[2]    § 723.075(1); *see also Rule 1.222: Fla. R. Civ. P. ,* Mobile Homeowners' Associations*,* which reads:

A mobile homeowners' association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all homeowners concerning matters of common interest, including, but not limited to: the common property; structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving the park property; and protests of ad valorem taxes on commonly used facilities. If the association has the authority to maintain a class action under this rule, the association may be joined in an action as representative of that class with reference to litigation and disputes involving the matters for which the association could bring a class action under this. Nothing herein limits any statutory or common law right of any individual homeowner or class of homeowners to bring any action which may otherwise be available. An action under this rule shall not be subject to the requirements of rule 1.220.

*Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, Ltd.*, 541 So.2d 1121 (Fla. 1988)("... we similarly note that the **unique features of mobile home residency call for an effective procedural format for resolving disputes between park owners and residents concerning matters of shared interest. Again, we recognize the usefulness of the policy sought to be asserted by the legislature.** Pursuant to Florida Rule of Judicial Administration 2.130(a), we adopt the following to be titled *"Mobile Homeowners' Association,"* to be numbered *Florida Rule of Civil Procedure 1.222*, and to be effective immediately....") (Emphasis Added)

[3]    § 723.078(2)(c)8
[4]    § 723.037(1)
[5]    § 723.071(1)(a)
[6]    §§ 723.077(1), 723.079(1) and (3)

109.    The Plaintiff mobile home owners are "elderly persons" as defined by Section 825.101( 4), *Fla. Stat.*, as persons " ... 60 years of age or older who is suffering from the infirmities of aging as manifested by advanced age or organic brain damage, or other physical, mental, or emotional dysfunctioning, to the extent that the ability of the person to provide adequately for the person's own care or protection is impaired." The Plaintiff mobile home owners have mobility, balance, gait, vision, and hearing difficulties. When traveling about in public, many Plaintiff mobile home owners require the use of either walking canes or sticks, walkers, wheelchairs, audiovisual devices, and hearing aids. Consequently, many Plaintiff mobile home owners are "physically disabled," as defined by all applicable Florida and United States laws, and a member of the public whose rights are protected by these laws.

110.    Plaintiff mobile home owners suffer from low vision and age-related cognitive decline as a "qualified disability" under the ADA as defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h). They are substantially limited in performing one or more major life activities, including but not limited to accurately visualizing their world, adequately traversing obstacles and walking without assistance.

111.    The Park golf course, Aqua driving range, putting green, fishing lakes, 22,000 square foot clubhouse, full service restaurant and lounge, library, billiards room, fitness center, arts and crafts center, heated pool, fitness pool, pool side Wi-Fi bar, jacuzzi spa, locker rooms, sauna, tennis courts, pickle ball courts, shuffleboard courts, ballroom with seating for 350, 1400 square foot dance floor, performance stage, card and game room, Citizens Bank on site, ATM, styling salon, and pro shop are public accommodations, open to the public, which is intended for nonresidential use and whose operation affects commerce.

112.    The Plaintiff mobile home owners live in the Park and visit the Park facilities on a regular basis. Plaintiff mobile home owners regularly encounter barriers

(both physical and intangible) that interfered with - if not outright denied - their ability to use and enjoy the goods, services, privileges and accommodations offered at the Park. Plaintiff mobile home owners personally encountered the following barriers at the Facility:

    a)    The only ramp located at the right side of the Clubhouse parking area is improperly configured and contains no guide curbs;

    b)    On numerous occasions during their visits to the Clubhouse, Plaintiff mobile home owners experienced problems when transferring onto their wheelchair from their vehicle because of the configuration and side-slope of the designated parking space and access aisle located next to it;

    c)    During many visits to the rental office located inside the Clubhouse, Plaintiff mobile home owners have attempted but been unable to enter the office because the door of the office is too narrow for a wheelchair;

    d)    Plaintiff mobile home owners have been unable to enter the rental office by using an alternative entrance. Plaintiff mobile home owners have been unable to place their rental payment into the box located outside of the office and have had to return to place their payment in the box;

    e)    The public restrooms located inside the Clubhouse lack necessary wheelchair clearances to use the sink. Plaintiff mobile home owners experienced difficulty on many occasions while trying to use the restroom in the four years preceding this action;

    f)    Only one heated pool has a lift; the other pool and whirlpool does not have a lift.

    113.    Plaintiff mobile home owners were, and continue to be deterred from visiting the Clubhouse because they know that the Clubhouse's goods, services, facilities,

privileges, advantages, and accommodations deny full and equal access to Plaintiff mobile home owners due to their physical disabilities. Plaintiff mobile home owners have learned that the following additional barriers to their full and equal access exist at the Facility, each of which relates to his disabilities:

### Site Entrance Signage

    a)    Site informational signage was not provided directing to the accessible entrance and route of travel.

    b)    Tow-away warning signage was not provided visible from the street entrance or accessible parking space.

### Accessible Parking

    c)    Van accessible signage was not provided for the van accessible parking space.

    d)    Accessible parking access aisles was not outlined in blue.

    e)    Accessible parking signage mounted on the pole is not 80" minimum above the surface.

### Exterior Accessible Routes

    f)    A minimum of one accessible route was not provided from the public way to the accessible entrance. The main social room is only accessible via a steep (graded in excess of 25%) paved driveway to the front entrance.

    g)    Sidewalk has raised lips that exceed 1/4" in height.

    h)    Ramp at the end of the access aisle does not have edge protection on both sides of the ramp and exceeds 8.33%.

### Accessible Doors

    i)    Entrance door thresholds exceed 1/2" in height.

j)      Entrance door landings exceed 2% slope.

k)      Entrance doors do not have the required smooth kick plate 10" high on the bottom of the doors.

**Lack of Elevator**

l)      There is no elevator in the three floor clubhouse. The main social events or large congregational ball room is on the second floor. Defendants' management offices are on both the second and third floors.

**Restrooms**

m)      Side grab bars are not 48" long and extending a minimum of 24" in front of the toilet.

n)      Rear grab bar was not properly located on the wide side of the toilet.

o)      Soap dispenser was not located to be 40" maximum above floor to operable parts.

p)      Toilet paper dispenser was not located to be 7"- 9" in front of toilet.

q)      Plumbing and sharp objects under sink were not properly protected.

r)      Toilet was not offset to be 16"-18" from side wall.

s)      Proper floor clear area was not provided in front of the toilet for transfer space.

**Seating & Tables in restaurant**

t)      A minimum of one accessible table was not provided with proper knee clearance.

**General**

u)  Defendants Steven Adler, Murex Properties, and Northwestern
Mutual do not have policies, practice and procedures in place to
ensure that the Park is maintained in a condition so as to provide
full and equal access to persons in wheelchairs.

v)  There are no fire alarms, strobes, horns or sprinkler system in the
main social events or large congregational ball room on the second
floor.

114.  Plaintiff mobile home owners live at the Park and must have ongoing access
to the Clubhouse.

115.  Defendants Steven Adler, Murex Properties, and Northwestern
Mutual knew or should have known that these elements and areas of the Clubhouse
were inaccessible, violate state and federal law, and interfere with or deny access to
the physically disabled. Moreover, Defendants Steven Adler, Murex Properties, and
Northwestern Mutual have the financial resources to remove these barriers from
the Park without much difficulty or expense, and make the Park accessible to the
physically disabled. To date, however, Defendants Steven Adler, Murex Properties, and
Northwestern Mutual refuse to either remove those barriers or seek an unreasonable
hardship exemption to excuse non-compliance.

116.  At all relevant times, Defendants Steven Adler, Murex Properties, and
Northwestern Mutual have possessed and enjoyed sufficient control and authority to
modify the Park to remove impediments to wheelchair access and to comply with the
2010 Standards for Accessible Design. Defendants Steven Adler, Murex Properties, and
Northwestern Mutual have not removed such impediments and have not modified the
Park to conform to accessibility standards. Defendants Steven Adler, Murex Properties,
and Northwestern Mutual have intentionally maintained the Park in its current condition

and have intentionally refrained from altering the Park so that it complies with the accessibility standards.

117.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

118.    Defendants Steven Adler, Murex Properties, and Northwestern Mutual discriminated against Plaintiffs by denying them "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Clubhouse during each visit and each incident of deterrence.

**Failure to Remove Architectural Barriers in an Existing Facility**

119.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

120.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id.* § 12182(b)(2)(A)(v).

121.    Here, Plaintiffs allege that Defendants Steven Adler, Lorraine DeMarco, Scott Provost, Murex Properties, and Northwestern Mutual can easily remove the architectural barriers at the Park without much difficulty or expense, and that Defendants Steven Adler, Lorraine DeMarco, Scott PrDefendants Steven Adler, Murex Properties, and Northwestern Mutual, when it was readily achievable to do so.

122.    In the alternative, if it was not "readily achievable" for Defendants Steven Adler, Murex Properties, and Northwestern Mutual to remove the Park's barriers, then Defendants Steven Adler, Murex Properties, and Northwestern Mutual violated the ADA

by failing to make the required services available through alternative methods, which are readily achievable.

### Failure to Make an Altered Facility Accessible

123.     On information and belief, Defendants Steven Adler, Murex Properties, and Northwestern Mutual have made substantial alterations to the Clubhouse since 2011 and have failed to make the altered Clubhouse accessible.

124.     Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendants Steven Adler, Murex Properties, and Northwestern Mutual.

WHEREFORE, Plaintiffs demand judgment against Defendants Steven Adler, Murex Properties, and Northwestern Mutual and request injunctive and declaratory relief.

### Demand For Jury Trial

Plaintiff mobile home owners demand a jury trial as to all issues triable by jury in this case.

### Relief Requested (All Counts)

Wherefore, as to all counts, Plaintiff mobile home owners request that:

a.     Judgment be entered in favor of Plaintiff mobile home owners and against Steven Adler, Lorraine DeMarco, Scott Provost, Marti Newkirk, Charles Crook, Randall Knapp, Richard Lee, David Eastman, Murex Properties, Northwestern Mutual, Osprey Links, Schalamar GP, and Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.     Plaintiff mobile home owners be awarded treble damages to the extent

permitted by 18 U.S.C. § 1964(c) and § 772.104, *Fla. Stat.*;

      c.    Plaintiff mobile home owners be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

      d.    Plaintiff mobile home owners be awarded prejudgment interest on the amount of damages and/or losses that Plaintiff mobile home owners have sustained;

      e.    Plaintiff mobile home owners be awarded injunctive relief pursuant to Rule 65, *Fed. R. Civ. P.*;

      f.    The Court issue a declaratory judgment that Defendants Steven Adler, Murex Properties, and Northwestern Mutual violated the Plaintiff mobile home owners' rights as guaranteed by the ADA;

      g.    Plaintiff mobile home owners be awarded reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 1964(c);

      h.    Plaintiff mobile home owners be awarded such other and further equitable and legal relief as the Court deems just and necessary.

      Dated: July 1, 2019.

                  Respectfully Submitted,

                  /S/ Daniel W. Perry
                  DANIEL W. PERRY
                  Fla. Bar No. 376671
                  4767 New Broad St, #1007
                  Orlando, FL 32814-6405
                  Ph: 407-894-9003
                  Email: dan@danielperry.com
                  Attorney for Plaintiffs