## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SCHALAMAR CREEK MOBILE
HOMEOWNER'S ASSOCIATION, INC., *et. al*,

Plaintiffs

Case No: 8:19-cv-00291-JSM-AEP

v.

STEVEN ADLER, *et. al*,

Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT

Defendants, Lorraine DeMarco, Marti Newkirk and Murex Properties, LLC ("**Murex**")(collectively, the "**RICO Defendants**"), pursuant to Rule 56, *Fed.R.Civ.P.*, move for summary judgment in their favor on the RICO claims asserted against them by plaintiffs, Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill, Linda Gledhill, Joette Kelly and Cathy Liska (collectively, the "**Individual Plaintiffs**").

Defendants, Northwestern Mutual Life Insurance Co., Stephen Adler and Murex (collectively, the "**ADA Defendants**"), pursuant to Rule 56, *Fed.R.Civ.P.*, move for summary judgment in their favor on the ADA claim asserted against them by plaintiff, Schalamar Creek Mobile Homeowner's Association, Inc.  (the "**Association**").

## STATEMENT OF THE CASE

Movants are the only remaining defendants in this case.   The Individual Plaintiffs bring the RICO claims.  One *substantive* RICO claim (Count One) remains pending against DeMarco and Newkirk, and one *substantive* RICO claim (Count Two) remains pending against Murex.  One

RICO *conspiracy* claim (Count Three) remains pending against DeMarco and Newkirk, and one RICO *conspiracy* claim (Count Four) remains pending against Murex. The RICO claims fail for several reasons, including the Individual Plaintiffs' lack of Article III standing because they have not alleged an actual injury.   As a note, in their Response (Doc. <u>107</u>) to the Court's show cause order, the Individual Plaintiffs "concede the claim of improper ad valorem tax pass-ons . . . fails in light of the Court's ruling that the individual Plaintiffs have no standing . . . ."   (Response at p. 2). Thus, the only alleged "fraud" left in this case is that supposedly involving the "P6" prospectus. *Id*.   Accordingly, with respect to RICO, this motion is confined to that "fraud."  And with respect to that, the undisputed (and indisputable) facts and this Court's prior holding demonstrate no genuine issue of material fact exists and the RICO Defendants are entitled to entry of summary judgment in their favor.

A single claim <u>by the Association</u> under the Americans with Disabilities Act (Count Five) remains pending against the ADA Defendants.     They are all entitled to entry of summary judgment on the ADA claim because the Association lacks Article III standing to bring it and because the record evidence demonstrates no genuine issue of material fact on the merits.

## <u>MEMORANDUM OF FACTS AND LAW</u>

Defendants are entitled to entry of summary judgment in their favor on all claims.

## I.     <u>The RICO Claims fail to state an actionable claim against the RICO Defendants</u>.

The RICO Defendants are lumped indiscriminately in the RICO claims.  At this point, the only alleged "fraud" advanced is that the park owner is fraudulently forcing "resale purchasers" to accept the P6 Prospectus at closing.

Firstly, the Individual Plaintiffs lack Article III standing to bring a RICO claim based on this theory because none of them could have suffered a direct injury by virtue of the alleged fraud.

Secondly, the park owner and each homeowner are free to contract to use any of the "approved" prospectuses at Schalamar Creek without violating the Florida Mobile Home Act (the "**FMHA**"), Chapter 723, *Florida Statute.*[1]

Thirdly, the FMHA is a regulatory statute, not a criminal statute, establishing civil remedies but no criminal remedies.  *See Drummond, et al. v. Zimmerman, et al.*, U.S. District Court for the Southern District of Florida, West Palm Beach Division, Case No. 19-81532-CIV (Doc. <u>31</u>)("The Florida Mobile Home Act permits civil remedies for violations; it is not a criminal statute."); *Bahrakis, et al. v. Zimmerman, et al.*, United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:19-cv-02948-SCB-SPF (Doc. <u>27</u>) (same).  Violation of the FMHA is not "indictable" conduct.   As this Court has already found, enumerated racketeering activities are "only acts that are 'indictable' (or, what amounts to the same thing, 'chargeable' or 'punishable') under one of the statutes identified in § 1961(1)." (Doc. <u>36</u> at p. 17) (citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S.Ct. 2090, 2102 (2016)).

Fourthly, the RICO "mail and wire fraud" claims lack any allegation, much less evidence, of a fraud in connection with the P6.   Absent a "scheme to defraud," mail and wire fraud RICO claims cannot stand.   *Worldspan Marine Inc. v. Comerica Bank*, 2020 WL 1238732 at *4 (S.D. Fla. Feb. 27, 2020).

Under Rule 56, the moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Where, as here, the non-moving party bears the burden of proof at trial, the moving party <u>need only prove there is an absence of evidence to support the non-moving party's</u>

---

[1]Osprey Links, LLC sought and in 2015 obtained the required approval from the Florida Department of Business and Professional Regulation to offer the "P6" prospectus at the Park.

case. *Id.* at 325, 106 S.Ct. 2548.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S.Ct. 2548.  This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.  *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Counts One and Two both attempt and fail to state a claim for substantive RICO violations under § 1962(c) (together with intermingled claims under Florida's substantive RICO statute).[2]  A violation of § 1962(c) requires "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 483 (1981).  Even taken as true, the Amended Complaint fails to state a violation of § 1962(c) because there is no "enterprise" or "racketeering activity" alleged.  For the same reason, Counts Three and Four alleging RICO "conspiracy" under § 1962(d) (again, intermingled with claims under Florida's RICO conspiracy statute) both fail because the same elements are absent – there is no "enterprise" or "racketeering activity."  None of the conduct at issue constitutes an indictable offense.  On the contrary, the central act of offering and entering into an alternative rental agreement with a mobile home park resident is expressly authorized under Florida law. A resident can decide to accept *any* approved

---

[2]Florida's RICO statutes are patterned after the federal RICO statutes, and as such Florida courts look to federal law for guidance.  *See Bortell v. White Mountains Ins. Group, Ltd.*, 2 So.3d 1041, 1047 (Fla. 4th DCA 2009) ("Because the Florida RICO Act is patterned after the federal act, Florida looks to federal authorities in construing its own RICO statute.").

prospectus and rental agreement. *See Tara Woods SPE, LLC v. Cashin*, 116 So.3d 492 (Fla. 2d DCA 2013).

### A.    The Individual Plaintiffs lack Article III standing.

At this point, the Individual Plaintiffs advance only one remaining theory of fraud, but none of them could have suffered any injury as a result.   Plaintiffs allege the park owner is fraudulently forcing "resale purchasers" to accept the P6 Prospectus at closing.   Former Defendant Osprey Links, LLC is the owner of the park.   Murex is the property manager, a disclosed agent of the park owner.  (Am. Compl. at ¶ 3).   Newkirk and DeMarco are one step further removed from the park owner – they are employees of Murex.  *Id*. at ¶¶ 4, 7.    Summary judgment has already been entered holding that the Individual Plaintiffs lack standing to bring the RICO claims against the park owner.  (Doc. 109).  Because the Individual Plaintiffs lack standing to sue the park owner for *the park owner's alleged fraud*, it follows as a matter of law that they likewise lack standing to sue the park owner's disclosed agent and its employees *for the park owner's fraud.*  So, as a matter of law, the Individual Plaintiffs lack standing to bring the RICO claims against the RICO Defendants.[3]

The same is true as a matter of fact.  None of the Individual Plaintiffs (under "force" or otherwise) accepted or converted to the P6 prospectus when they purchased their respective lot. Instead, each of them bought a resale home under an existing rental agreement *already subject to the P6 prospectus.* (Adler Supplemental Aff. at ¶ 12).  As Mr. Adler's affidavit establishes, and as the Plaintiffs have admitted in their deposition testimonies and in their recent Response to the

---

[3]Along that same line, the Court has already ruled that other former individual plaintiffs on the exact same footing as the remaining Individual Plaintiffs lacked standing to bring Count One and Count Two because they suffered no direct injury (*i.e*., Barbara Griffin).  The Individual Plaintiffs are no differently situated than those former plaintiffs; they suffered no injury either.

Court's show cause order.  (Doc. 107).  Plus, the documents speak for themselves and are unambiguous.  The only rental agreement any of them could have elected to assume per the FMHA was already subject to a P6 prospectus.  Consequently, none of them "surrendered" the statutory right to assume an existing rental agreement governed by a prospectus different from the P6.  Not a single plaintiff is a victim.

The Court has already ruled on this point in its April 6, 2020 Order (Doc. 103) granting summary judgment in favor of the other Defendants on the same P6 issue:

> **The remaining Individual Plaintiffs purchased resale homes already subject to the P6 Prospectus.  So these Individual Plaintiffs were not forced to accept the P6 Prospectus since the homes they purchased were already subject to it.**
>
> **Because none of the Individual Plaintiffs are resale purchasers who were forced to accept the P6 Prospectus at closing, none of the Individual Plaintiffs have an injury in fact.  Thus, Movant Defendants are entitled to summary judgment on this claim as well.**

Order at p. 7 (emphasis added).

RICO requires a plaintiff show injury "by reason of" the predicate act (and that the plaintiff was the intended target of the scheme).   18 U.S.C. § 1964(c).   Every one of the Individual Plaintiffs must satisfy the requirements of Article III standing.  This fundamental requirement is not limited or reduced here because this is a putative class action, rather each of the Individual Plaintiffs bears the burden of proving personal standing.  *See, e.g.*, *Wooden v. Bd. of Regents of Univ. System of Ga.*, 247 F.3d 1262, n. 20 (11th Cir. 2001) (involving multiple plaintiffs: "Similarly, the fact that this suit was brought as a class action does not alter [individual plaintiff's] obligation to show that he individually satisfies the constitutional requirements of standing.") (citing *Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339, n. 6 (11th Cir. 2000)).  The possibility that another named class representative or even an unnamed class member may have standing to advance the claim does not establish standing for a named plaintiff who cannot

otherwise satisfy the constitutional requirements.  *Wooden*, 247 F.3d at n. 20 (citing *Bowen*, 233 F.3d at n. 6); *see also*, *Griffin v. Dugger,* 823 F.2d 1476, 1483 (11th Cir. 1987) ("[A] plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue.'").[4]  Here, <u>not one</u> of the Individual Plaintiffs has standing to advance the RICO claims.

As a final note, their Response (Doc. <u>107</u>) demonstrates the Individual Plaintiffs are attempting to align themselves with a *different* fact pattern that does not exist here.   The Response falsely states that "[s]ix of the eight individual named Plaintiffs were defrauded and required to accept the P6 Prospectus. . . . "[5] (Response at p. 2).   That is simply not true.   False characterization

---

[4]Even a class plaintiff with standing to advance one claim because of a direct injury may lack standing to advance other claims due to a lack of injury.  *Wooden*, 247 F.3d at n. 20 (citing *Bowen*, 233 F.3d at n. 6).

[5]That did not occur here.  Rather, that is the fact pattern alleged in *Tara Woods SPE, LLC v. Cashin*, 116 So. 3d 492 (Fla. 2d DCA 2013), and even there the court found that was *not* a violation of the FMHA.   In *Cashin*, the mobile home park owner had existing prospectuses that limited base rent increases to increases in the CPI.  Like here, the park owner in *Cashin* gained approval of a new prospectus with an attached lifetime lease allowing for rent increases tied to the increase in CPI. *Id*. at 94.  But, unlike here, the current rental agreement on the home in *Cashin* <u>at the time of closing</u> was different than the new prospectus offered by the park owner <u>to the purchaser</u> at closing. In other words, the purchaser in *Cashin* converted to a new prospectus at closing, when she could have elected to exercise the statutory right to assume a different prospectus.

Later, she sued alleging that the park owner was legally required to deliver the original/alternative prospectus to her and to explain the differences, thus enabling her to make an informed decision whether to assume the existing prospectus.   The trial court accepted Ms. Cashin's premise.   The Second District Court of Appeal *reversed,* holding that the obligations imposed by the trial court are not duties prescribed by the FMHA.   The FMHA does not obligate the park owner or its agents to assist the resident in evaluating the offered contracts.   The park owner is not required to: (1) provide a copy of the seller's original prospectus to a resale buyer; (2) provide a copy of the optional lease; (3) inform potential buyers of the different rental amounts under the alternate contracts; or (4) provide "a verbal explanation of the resale buyer's rights." *Cashin*, 116 So.3d at 499-501.  In short, even if the fact pattern here was like *Cashin*, it would not avail itself to the Individual Plaintiffs.

aside, reviewed closely, the facts disclosed in the Response confirm the true state of affairs.  Every one of the "six" referenced Individual Plaintiffs chose to buy a home already subject to the P6 prospectus:  (i)  "Named plaintiffs Don and Linda Gledhill purchased their second mobile home in the Park in December 2016, <u>subject to a P6</u>;" (ii)   "Named plaintiff Phil Featherbay purchased his mobile home in the Park in 2016 . . . <u>subject to a P6 prospectus</u> . . . ."; (iii)  "Named plaintiff Joette Kelly purchased her mobile home in the Park in January 2018 . . . <u>subject to a P6 prospectus</u> . . . ."; (iv)  named plaintiff Cathy Liska purchased her mobile home in the park in March 2016. . . <u>subject to a P6 prospectus</u> . . . ."; (v)  "Named plaintiff Sherry Atwood purchased her mobile home in the Park, <u>subject to a P6 prospectus</u> . . . ."; and (vi) "Named plaintiff James Driskell purchased her [sic] mobile home in the Park . . . <u>subject to a P6 prospectus</u> . . . ."  *Id*. at pp. 3-4 (Emphasis added).

### B.      Offering and entering into the P6 Prospectus does not violate the FMHA.

The Individual Plaintiffs themselves have admitted that offering and entering into the P6 Prospectus is not "illegal" under the FMHA.   Each of them admitted the P6 prospectus could, under the FMHA, be offered to and accepted by any homeowner who elected to receive it, *all lawfully*.[6]  (App. at Tabs "26" – "33;" ¶¶ 54-59).   Plaintiffs admit none of them has the right to dictate which prospectus is offered to or accepted by another homeowner.  *Id*. at ¶¶ 57-58.

More fundamentally, at the end of the day, a violation of the FMHA cannot be the basis of a RICO claim under federal or Florida law because the FMHA is not a criminal statute.    As this

---

[6]Former plaintiff Barbara Griffin nailed this in her testimony.  She agreed the owner of the Park is free to offer and enter into the P6 with a homeowner.  (Griffin Depo. at pp. 15-16; 25)(App. at Tab "<u>13</u>").  "<u>If you choose your P6 with knowledge and understanding, then you have no complaint.</u>" *Id*. at p. 25.   And, she admits neither the Association, any homeowner, nor any plaintiff in this case can take away <u>her</u> freedom of contract as a homeowner to accept the P6.  *Id*. at pp. 25-26.

Court has already held, enumerated racketeering activities are "only acts that are 'indictable' under one of the statutes identified in § 1961(1)." (Doc. 36 at p. 17). Violating the FMHA is not an "indictable offense" identified in § 1961(1).

### C.   No material misrepresentation is even alleged to support mail or wire fraud.

Plaintiffs left the "racketeering" out of RICO. They left the racketeering out of RICO because they left the "fraud" out of mail and wire fraud.

RICO outlaws criminal racketeering. No racketeering is present here because there is no fraud regarding the P6. RICO claims predicated on mail and wire fraud *must* include actionable fraud, which requires a material misrepresentation and reliance. Absent those two elements, no fraud can occur. Without fraud, no mail or wire fraud can occur. And, in turn, without mail or wire fraud, no racketeering is present. And when no racketeering is present, no RICO claim is stated.

The substantive RICO claims (Counts One and Two) are for violation of 18 U.S.C. § 1962(c) and are based solely on mail and wire fraud.[7] (Compl. at ¶¶ 89 - 99). Mail or wire fraud requires a "scheme to defraud."[8] A scheme to defraud must involve a material misrepresentation and reliance thereon. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257-58 (11th Cir. 2004). RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it. *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d

---

[7]Violation of § 1962(c) requires "(1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1981).

[8]"Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses mails or wires in furtherance of that scheme." *Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) .

629, 637 (D.C. Cir. 2001)(quoting *Al–Abood ex rel. Al–Abood v. El–Shamari,* 217 F.3d 225, 238 (4th Cir. 2000)).

There is no material misrepresentation (or reliance thereon) alleged in this case to support a RICO claim predicated on mail or wire fraud.  No allegation is made or proof offered that any of the RICO Defendants made any material misrepresentation about the P6 prospectus (certainly not to the Individual Plaintiffs).  Nobody alleges any RICO Defendant misrepresented to any Individual Plaintiff that a rental agreement was subject to a P6 prospectus when it was not (all the rental agreements at issue were already subject to a P6).  Nobody suggests a RICO Defendant fraudulently described anything in the P6 prospectus to them.  Nobody alleges they were told they were signing a different document.  Nobody alleges any misrepresentation at all, much less reliance.

Lest Plaintiffs claim in response to this motion that the RICO Defendants *omitted* a material fact (they don't allege that in their complaint), there can be no duty to disclose here.  The parties were on opposite sides of the table in an arm's length transaction and *Cashin* establishes that the seller of the home (not the owner of the Park) is the party legally obligated to provide the governing prospectus to the buyer.  And, in any event, what relevant fraudulent omission could have occurred with respect to the P6 that could cause an injury here?   Assuming, for example, that the RICO Defendants had a duty to (they did not), but failed to, remind the plaintiffs they each had a statutory right to assume the existing prospectus, that is still exactly what each Individual Plaintiff did here – assume the existing prospectus – which in each instance was already the P6.

### D.    Counts One/Two – RICO Defendants did not violate § 1962(c).

In Counts One and Two, the Individual Plaintiffs allege DeMarco and Newkirk violated § 1962(c) of RICO, which prohibits a person from conducting or participating in the conduct of the

affairs of an enterprise through a pattern of racketeering activity.  18 U.S.C. § 1962(c).  For the reasons addressed above, DeMarco and Newkirk are entitled to summary judgment.

### E.  Counts Three/Four – RICO Defendants did not violate § 1962(d).

In Count Three, the Individual Plaintiffs allege DeMarco and Newkirk violated § 1962(d) of RICO, which makes it illegal to conspire to violate RICO.  18 U.S.C. § 1962(d).  In Count Four, the Individual Plaintiffs bring the same conspiracy claim against Murex.  Only boilerplate allegations of conspiracy are made, which need not be addressed because those are insufficient to withstand summary judgment.  Plaintiffs do not even plead the necessary meeting of the minds between the alleged conspirators.  *See Am. Dental Ass'n. v. Cigna Corp*., 605 F.3d 1283, 1295 (11th Cir. 2010).  Absent pleading (and proof) the RICO Defendants agreed to participate in the conspiracy, the RICO claims fail.  *Id*.  That requires proof that: (1) each of the RICO Defendants agreed on an overall objective; or (2) by showing each of the RICO Defendants agreed to personally commit two predicate acts.  Both are missing here.

Finally, because Plaintiffs cannot state a substantive RICO claim against <u>any</u> Defendant, it follows as a matter of law they cannot state a RICO conspiracy claim against any of the RICO Defendants (or any other Defendant, for that matter).

### F.  RICO Defendants are entitled to summary judgment under Florida RICO.

"A Florida RICO claim is examined in the same way as a federal RICO claim." *Catano v. Catano*, 2019 WL 3035752, *8 (S.D. Fla. July 11, 2019)(citing *Ferrell v. Durbin,* 311 Fed. Appx. 253, 256 (11th Cir. 2009)); *see also, Dragon Jade Int'l., Ltd. v. Ultroid, LLC*, 2019 WL 2602895, * 4 (M.D. Fla. June 25, 2019)(same).  For the same reasons they are entitled to summary judgment under the federal RICO statute, the RICO Defendants are likewise entitled to summary judgment under the Florida RICO statute.

II.     **Count Five fails to state an actionable claim under the ADA.**

Count Five fails to state a claim against Northwestern Mutual Life Insurance Company, Murex, or Adler for alleged violations of the Americans with Disabilities Act of 1990 (the "**ADA**") because the Association lacks Article III standing to bring it.   Lack of standing aside, there are no genuine issues of fact that preclude a finding that the ADA Defendants are entitled to summary judgment in their favor.

A.     **Absence of Article III Standing:**

Count Five is brought solely by the Association. No disabled individuals are included as a plaintiff and standing "is a threshold jurisdictional requirement." *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).  Rather, the Association attempts to assert the claims upon the premise that members are "elderly" and suffer from a broad spectrum of infirmities.

The Eleventh Circuit has stated that "an association may bring suit on behalf of its members or constituents despite the fact that individual members have not actually brought suit themselves. Nor must the association name the members on whose behalf suit is brought." *Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir.1999).  In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (U.S. 1977), the Court created a three-element test to determine whether an association has Article III standing to pursue equitable remedies on behalf of its membership: "[t]hus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the

lawsuit." But, to satisfy the first prong of the *Hunt* test, the Association must show that at least one of its constituents has standing to sue for the violations alleged. *Id*. at 886.

Certainly, some, if not most residents of the Park do not meet the disability requirements for ADA standing. The physical characteristics of the Park described in the Complaint are only barriers to persons who are comparably physically disabled. The Association's broad list of alleged barriers and lack of specified individuals with corresponding disabilities do not satisfy the first prong of the test established in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S.333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (U.S. 1977). *See also, Drummond v. Zimmerman,* 19-81532-CIV, 2020 WL 1845671, at *7 (S.D. Fla. Apr. 13, 2020).

The Association cannot, as a matter of law, establish the second prong of the *Hunt* test: that the interests it seeks to protect are germane to the Association's purpose. The duties and responsibilities of the Association are defined by statute, *Fla. Stat*. §§ 723.075, 723.077, 723.078, and 723.079. The Association exists for the benefit of the homeowners and the mobile home park; it is not a disability advocacy group. The Association lacks standing to assert ADA claims on behalf of its members. *Asbury*, 2020 WL 871097, at *3, *Drummond*, 2020 WL 1845671 at *7.

### B.    The Lack of Expert Testimony:

"To meet the burden of proof in discrimination cases focused on pre-existing buildings, a plaintiff must present evidence of a barrier, the removal of which is 'readily achievable'." *Duldulao v. Kennedy Spa, LLC*, 8:10-CV-2607-T-30AEP, 2013 WL 2317729, at *2 (M.D. Fla. May 28, 2013) citing *Gathright Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006). "Once the plaintiff meets his burden, then defendant bears the ultimate burden of persuasion that barrier removal is not 'readily achievable.'" *Id*. "Readily achievable" is defined under the ADA as "easily accomplished and able to be carried out without much difficulty or

expense." 42 U.S.C. § 12181(9). The initial burden is not light.  Rather, "a plaintiff must present sufficient evidence so defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the costs of implementation, and the economic operation of the facility. Without evidence on these issues, a defendant cannot determine if it can meet its subsequent burden of persuasion." *Id.* at 1274. Importantly, the Association's complaint was replete with non-specific, conceptual lists and proposals that provided no cost or feasibility analysis.

Pursuant to the Case Management Scheduling Order (Doc. 29, ¶ 1), the Association's Expert disclosure was due on or before January 31, 2020.  The Association disclosed *no expert*.

For their part, the ADA Defendants timely disclosed the report of E. William Henry, Ph.D., principal architect of RGA Design Forensics, attached hereto as Exhibit "A."  Dr. Henry's report fully refutes the Association's unsupported allegations.

The Eleventh Circuit adopted the burden-shifting approach to ADA cases followed by the Tenth Circuit in *Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership I,* 264 F.3d 999, 1007 (10th Cir. 2001). *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273-4 (11th Cir. 2006). Here, as in *Gathright-Dietrich*, the Association lacks qualified expert testimony. "Appellants also failed to provide expert testimony to assure the feasibility of their proposed seating modifications and did not, in any meaningful way, address the engineering and structural concerns associated with their proposals or the effect that those proposals would have on the historic features of the theater." *Id*. at 1274-5.  The Court confirmed the role of expert testimony in a plaintiff's burden of persuasion.

> Not only did appellants fail to produce a financial expert to link the estimated costs of their proposals with The Fox's ability to pay for them, they failed to take even the rudimentary steps of formulating what those estimated costs might be or providing any evidence of The Fox's financial position and ability to pay those costs. The only "evidence" presented by the appellants of the costs associated with their proposed modifications consists of testimony by an ADA expert who

summarily opined that some of the proposed modifications would be "low-cost" or "inexpensive," while others would be "more expensive," and that some modifications would cost similarly to previous modifications. Accordingly, we conclude that the district court did not err in finding that the appellants could not meet their burden of production for barrier removal.

*Id.* at 1275.

The Association provided no qualified expert testimony to shift the burden of proof to defendants. The Association ignored its agreed deadline to support its bare allegations. Not only was the burden never shifted to Defendants, they were not apprised of the Association's arguments that the barrier removals were readily achievable. In spite of the Association's failures, Defendants secured qualified testimony refuting the Association's claims. Dr. Henry addressed the Association's litany of failures.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the non-moving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49. There must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989). The Association has failed to meet its burden and Defendants are entitled to summary judgment on the ADA claims.

###    C.    Failure to Name the Park Owner in Count Five:

Lastly, the ADA claim (Count Five) names as defendants: Steven Adler, managing member of Murex, the management company for Schalamar Creek, Murex, and Northwestern Mutual Life Insurance Company. It fails to name the park owner – Osprey Links, LLC – as a defendant. The

amended complaint correctly identifies the property owner as Osprey Links, LLC.   (Doc. 44, ¶ 11).  The Association lacks any evidence that the named defendants have the authority to address any barriers.

## CONCLUSION

The RICO Defendants and the ADA Defendants respectfully request entry of final summary judgment in their favor on all claims, with the Court reserving jurisdiction to award them their reasonable attorney's fees incurred in this action and granting such other and further relief as may be just and proper.

*/s/ Ali V. Mirghahari*
Mahlon Barlow
Florida Bar No. 871117
mbarlow@sbwlegal.com
mhbassistant@sbwlegal.com
Ali V. Mirghahari
Florida Bar No. 1003493
amirghahari@sbwlegal.com
SIVYER BARLOW & WATSON, P.A.
SunTrust Financial Centre
401 E. Jackson Street, Suite 2225
Tampa, FL 33602
Main: (813) 221-4242
Fax:   (813) 227-8598
*Co-Counsel for all Defendants*

and

J. Allen Bobo
Florida Bar No.  0356980
Jody B. Gabel
Florida Bar No.  0008524
LUTZ, BOBO & TELFAIR, P.A.
2 North Tamiami Trail, Suite 500
Sarasota, FL  34236-5575
Telephone:     941-951-1800
877-951-1800 (toll-free)
Facsimile:      941-366-1603
Email:  jabobo@lutzbobo.com
Email:  jbgabel@lutzbobo.com
*Co-Counsel for all Defendants.*

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on April 24, 2020, I electronically filed the foregoing document with the Clerk of Court via CM/ECF, which will send Notice of Electronic Filing to counsel or parties authorized to receive electronic filings in this case.

*/s/ Ali V. Mirghahari*
Attorney