UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCHALAMAR CREEK MOBILE
HOMEOWNER'S ASSOCIATION,
INC., *et al.*,

        Plaintiffs,

v.                                                          Case No. 8:19-cv-291-TPB-AEP

STEVEN ADLER, *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

    This cause comes before the Court upon Defendants' Supplemental Motion for Prevailing Party Attorney's Fees and Costs (Doc. 158). Plaintiffs filed a response in opposition to Defendants' request for fees and costs (Doc. 159) and a notice of supplemental authority (Doc. 163). For the reasons discussed below, it is recommended that the motion be granted in part and denied in part without prejudice.

### I.     Background

    Plaintiff Schalamar Creek Mobile Homeowner's Association, Inc. (the "Plaintiff Association") is the mobile homeowner's association in the Schalamar Creek Golf Mobile Home Park ("Schalamar Creek Park") (Doc. 2, at ¶¶ 17-20). On February 5, 2019, the Plaintiff Association filed a Complaint on behalf of current and former homeowners (Doc. 2). The Complaint alleged violations of the federal

and state Racketeer Influenced and Corrupt Organizations Act ("RICO"), unjust enrichment, violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and violations of the Americans with Disabilities Act ("ADA"), against 16 defendants: the individual and corporate current and former owners and operators of Schalamar Creek Park, a sanitation company and its owner, a law firm and attorneys of that law firm, and a manufactured housing association (Doc. 2, at ¶¶ 22-50).

The Plaintiff Association's claims raised several allegations, including the alleged wrongdoing related to the sale of Schalamar Creek Park in 2011, which resulted in higher pass-on ad valorem taxes for the mobile homeowners and allegations that in 2016, Defendants induced the mobile homeowners to sign a new prospectus which altered their lot rents and their resale rights (Doc. 2). Defendants moved to dismiss the initial Complaint (Docs. 8 & 11). The Court granted Defendants' motion to dismiss without prejudice (Doc. 36). The Court found that the Plaintiff Association lacked standing to assert any of the claims in the initial Complaint other than the ADA claim (Doc. 36). The Court also found that the Plaintiff Association's RICO claims failed for lack of specificity because the Plaintiff Association failed to state with particularity the circumstances constituting fraud and failed to allege facts with respect to each Defendants' participation in the fraud (Doc. 36, at 19). Additionally, the Plaintiff Association failed to enumerate racketeering activities (Doc. 36, at 19).

The Plaintiff Association and additional Individual Plaintiffs[1] (collectively "Plaintiffs") filed an Amended Complaint (Doc. 44). The Individual Plaintiffs raised four federal and state RICO and RICO conspiracy claims and the Plaintiff Association raised an ADA claim (Doc. 44).[2] Defendants moved to dismiss the Amended Complaint (Doc. 50), and for sanctions against the Plaintiff Association and its counsel under Florida Statutes §57.105 and Federal Rule of Civil Procedure 11 and moved for a bond under section 501.211, Florida Statutes (Docs. 48 & 49). The Court denied the motion for sanctions without prejudice (Doc. 61) and denied Defendants' motion to dismiss the Amended Complaint (Doc. 50).

Subsequently, Defendants Richard Lee and David Eastman, their law firm Lutz, Bobo & Telfair, P.A., and former owners of the mobile home park Randall Knapp and Schalamar GP, Inc., moved for summary judgment on the RICO claims (Docs. 92 & 93). The Court granted summary judgment in favor of the movant Defendants on the RICO claims (Doc. 103). The Court found that the Individual Plaintiffs lacked standing to assert claims based on alleged wrongdoing related to the sale of Schalamar Creek Park, which allegedly resulted in higher pass-on ad valorem taxes for the mobile homeowners (Doc. 103, at 5-6). Similarly, the Court found that the Individual Plaintiffs lacked standing to assert claims related to

---

[1] Sherry Atwood, James Driskell, Phil Featherbay, Don Gledhill, Linda Gledhill, Barb Griffin, Joette Kelly, and Cathy Liska (collectively "Individual Plaintiffs").
[2] Plaintiffs filed the Amended Complaint against the following Defendants: Steven Adler; Lorraine DeMarco; R. Scott Provost; Charles Crook; Marti Newkirk; Murex Properties, LLC; The Northwestern Mutual Life Insurance Company; Randall Knapp; Osprey Links, LLC; Schalamar GP, Inc.; Richard Lee; David Eastman; and Lutz, Bobo & Telfair, P.A. (collectively "Defendants").

Defendants' allegedly forcing new homeowners to enter into rental agreements subject to a new prospectus (Doc. 103, at 7). The Court found that the Individual Plaintiffs' claims were disjointed, lacked factual support, and bore no causal connection to the acts about which the Individual Plaintiffs complained (Doc. 103, at 8). The Court also ordered the Individual Plaintiffs to show cause why the non-movant Defendants were not also entitled to summary judgment on the RICO claims. *Id.*

The Individual Plaintiffs responded to the Court's Order to Show Cause and argued that each of them had standing "regarding" some of the non-movant Defendants (Marti Newkirk, Lorraine DeMarco, and Murex Properties, LLC), but did not raise any arguments regarding the remaining non-movant Defendants (Doc. 107). The Court concluded that the Individual Plaintiffs[3] claims against non-movant Defendants Newkirk, DeMarco, and Murex Properties, LLC should survive because the Individual Plaintiffs only addressed standing regarding those Defendants in response to the Court's Order to Show Cause (Doc. 109, at 2). The Court granted summary judgment in favor of non-movant Defendants Steven Adler, R. Scott Provost, Charles Crook, The Northwestern Mutual Life Insurance Company, and Osprey Links, LLC on Individual Plaintiffs' RICO claims (Doc. 109, at 2).

---

[3] One of the Individual Plaintiffs – Barb Griffin – failed to respond to the Court's Order to Show Cause and as a result, the Court concluded that she lacked standing to bring the RICO claims and granted summary judgment in favor of the non-movant Defendants on her claims (Doc. 109, at 2).

The remaining Defendants moved for summary judgment (Doc. 110). The Court[4] granted summary judgment in favor of the remaining Defendants on the RICO claims (Doc. 121, at 4-6). The Court also granted summary judgment against the Plaintiff Association on the ADA claim (Doc. 121, at 6-7). Plaintiffs appealed the summary judgment order entered in Defendants favor on the federal RICO claims and the ADA claim. The Eleventh Circuit Court upheld the district court's decisions. *See Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*, 855 F. App'x 546 (11th Cir. 2021).

Defendants filed a Verified Motion for Award of Attorney's Fees and Costs (Doc. 124). Plaintiffs responded to Defendants' motion (153). The undersigned denied Defendants' motion without prejudice, holding that Defendants could renew their motion or submit a supplemental motion after resolution of the pending appeal (Doc 154). Following the Eleventh Circuit's decision, Defendants filed a Supplemental Motion for Prevailing Party Attorney's Fees and Costs (Doc. 158), which incorporated Defendants' previous motion for attorney's fees and costs. Plaintiffs responded to the same (Doc. 159).

---

[4] The case was reassigned from District Judge James S. Moody, Jr. to District Judge Thomas P. Barber during the pendency of the remaining Defendants' motion for summary judgment (Doc. 116). Judge Moody granted summary judgment in favor of Defendants Richard Lee, David Eastman, Lutz, Bobo & Telfair, P.A., Randall Knapp, Schalamar GP, Inc., Steven Adler, R. Scott Provost, Charles Crook, The Northwestern Mutual Life Insurance Company, and Osprey Links, LLC (Docs. 103 & 109). Judge Barber granted summary judgment in favor of the remaining Defendants (Doc. 121).

## II.    Discussion

"Federal courts adjudicating state law claims, including claims brought under the court's supplemental jurisdiction, must apply the substantive law of the state along with the procedural law of the federal system." *Shelton v. Schar*, No. 5:17-cv-86-PGB-PRL, 2018 WL 6261485, at *1 (M.D. Fla. Oct. 18, 2018) (citing *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011)), *report and recommendation found moot due to parties' settlement*, Doc. 282 (M.D. Fla. Feb. 12, 2019). Statutes allowing for the recovery of attorney's fees generally apply in federal court because they reflect the substantive policy of the state. *Id.* (citing *Horowitch*, 645 F.3d at 1259). Defendants argue that they are entitled to attorney's fees pursuant to the following statutory attorney's fees provisions: (1) the prevailing party provision of the Florida Mobile Home Act ("FMHA"), section 723.068, Florida Statutes; (2) the Florida's RICO Act, sections 772.11 and 772.104, Florida Statutes; and (3) the prevailing party provision of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), section 501.2105(1), Florida Statutes. The undersigned will discuss Defendants' entitlement to attorney's fees and costs pursuant to each claim in turn**.**

### A. Attorney's Fees Under the FMHA

Under the FMHA, a prevailing party is entitled to reasonable attorney's fees "in any proceeding between private parties to enforce provisions" of the FMHA. Fla. Stat. § 723.068. Defendants argue that they are entitled to attorney's fees pursuant to the FMHA because Plaintiffs' grievances centered on alleged violations

of the FMHA, which constituted the underlying predicate acts for the federal and Florida RICO claims, the FDUTPA claim, and the unjust enrichment claim. Plaintiffs respond that Defendants are not entitled to attorney's fees pursuant to the FMHA because Plaintiffs did not go through the FMHA's dispute resolution process or asserted an FMHA claim.

Defendants provide no authority for the proposition that an action of common law and statutory claims not specifically arising under the FMHA should be treated as FMHA claims merely because conduct that violates the FMHA forms a part of the factual basis for those claims. Rather, Florida caselaw has found that simply invoking provisions of the FMHA is not sufficient to confer entitlement to attorney's fees. *See T & W Developers, Inc. v. Salmonsen*, 31 So. 3d 298, 301 (Fla. 5th DCA 2010). In *Salmonsen*, the plaintiff filed a three-count complaint seeking injunctive and declaratory relief. *Id*. at 300. Count II of the Complaint sought a declaration that an amendment to the deed of restrictions which had been adopted by the residents of the mobile home association was invalid because it unreasonably changed the general plan of development and sought a declaration that a review committee was the only entity empowered to enforce the deed of restrictions. *Id*. Count III sought a declaration that a provision in the amended deed of restrictions which required the plaintiff to provide cable television basic services was, alternatively, (1) unenforceable, (2) only required the plaintiff to provide access to basic cable television, (3) only required the plaintiff to provide basic service programming as defined by the FCC, or (4) declare that section 723.037, Florida

Statutes permitted the plaintiff to reduce or eliminate the cable service it was providing. *Id.* at 300-301. The trial court granted summary judgment for the defendant residents on Count II, ruling that the amendment to the deed of restrictions was valid, and for the plaintiff on Count III, ruling that section 723.037 applied to the mobile home subdivision. *Id.* at 301. Both parties filed motions for attorney's fees and the trial court found that the defendant residents prevailed on the substantial issues and were, thus, entitled to attorney fees under section 723.068, Florida Statutes as the prevailing party. *Id.*

On appeal, the Florida Fifth District Court of Appeal reversed the award, finding that neither party was entitled to an award of attorney's fees. *Id.* at 303. The Court found that the true nature of the relief requested and argued by the plaintiff was not to enforce any provision of chapter 723. *Id.* at 302-303. Additionally, the Court found that although the plaintiff obtained a declaration that it could use the procedure in section 723.037 to reduce services, it did not provide the plaintiff with a declaration to reduce services. *Id.* at 303. Therefore, the Court reasoned that neither party was entitled to fees pursuant to section 723.068. *Id.*

In the instant case, Plaintiffs did not specifically raise claims under the FMHA in the initial Complaint or the Amended Complaint (*see* Docs. 2 & 44). Additionally, the true nature of the relief requested and argued by Plaintiffs was not to specifically enforce the FMHA. The Complaint and Amended Complaint alleged that some of the Defendants conspired and unlawfully used the mail and wires to circumvent consumer protection laws, including the FMHA (*see* Docs. 2 & 44).

Although Plaintiffs alleged acts that constituted violations of the FMHA, as understood by the plain meaning of the FMHA fee provision, the claims raised by Plaintiffs were claims to enforce the Florida and federal RICO statutes, FDUTPA, and to protect against unjust enrichment. *See W.G. v. State*, 910 So. 2d 330, 332 (Fla. 4th DCA 2005) (stating that the court is bound to enforce the plain meaning of the statute the legislature has created); *Gallagher v. Manatee Cty.*, 927 So. 2d 914, 918 (Fla. 2d DCA 2006) (same).

Notably, in its Motion to Dismiss the Amended Complaint, Defendants argued that "[o]nly a homeowners' association may pursue or exercise a right of purchase under Section 723.071. The Association has not sued for any frustration of that right or attempted to rescind or disavow the 2011 'settlement agreement' under which it has received and continues to enjoy valuable consideration" (Doc. 50, at 10). Moreover, in the Plaintiff Association's response to Defendants' Motion to Dismiss, the Plaintiff Association seldomly referenced the FMHA (Doc. 13). The Plaintiff Association specifically cited to chapter 723, Florida Statutes when addressing its FDUTPA claim and alleging that Defendants violated public policy (Doc. 13, at 9). However, the Plaintiff Associations' mention of chapter 723 as the public policy basis of its FDUTPA claim does not convert the cause of action into an FMHA action.

Defendants cite to cases where Plaintiffs' counsel has appeared, in support of their argument that the FMHA fees provision is broad and encompasses any "proceeding" not just some specific type of claim or cause of action. However, in

those cases, the Court granted attorney's fees pursuant to the FMHA because the plaintiff mobile home association or individual plaintiffs raised a separate and distinct claim under the FMHA. *See Bahrakis v. Zimmerman*, No. 8:19-cv-2948-T-24 SPF, 2020 WL 4734929, at *1 (M.D. Fla. Aug. 14, 2020) (awarding attorney's fees to defendants pursuant to plaintiffs' Florida RICO claims, FDUTPA claim, FMHA claim, and civil theft claim); *Drummond v. Zimmerman*, No. 9:19-cv-81532, Doc. 49 (S.D. Fla. Oct. 8, 2020) (awarding attorney's fees to defendants pursuant to plaintiffs' Florida RICO claims, FMHA claim, and civil theft claim).

Defendants also cite to *Whispering Pines Mobile Homeowners' Ass'n, Inc. v. Wallach*, stating that the Court awarded attorney's fees pursuant to RICO's fee provision because the claims lacked factual and legal basis and also found that defendants were entitled to fees under the FMHA because plaintiffs' RICO claims were premised on alleged violations of the FMHA. *Whispering Pines Mobile Homeowners' Ass'n, Inc. v. Wallach et al*, No. 6:19-cv-487-CEM-EJK, 2020 WL 9455632 (M.D. Fla. Oct. 14, 2020), *report and recommendation adopted*, No. 6:19-cv-487-CEM-EJK, 2020 WL 9455606 (M.D. Fla. Dec. 2, 2020). However, like the other cases cited by Defendants, *Whispering Pines* is distinguishable from the instant case because in *Whispering Pines*, plaintiffs specifically alleged an FMHA claim. *Id.* Additionally, the Court did not award fees under RICO's fee provision because the claims lacked factual and legal basis. *Id.* at *2. Rather, the Court found that "where a particular claim is subject to a fee entitlement but one or more related claims are not, time spent marshaling the facts of the related claims is compensable because it

likely would have been spent defending any one or all of the counts." *Id.* (citing *Durden v. Citicorp Tr. Bank, FSB*, 763 F. Supp. 2d 1299, 1306 (M.D. Fla. 2011)). The Court reasoned that the Florida RICO Counts were related to the FMHA Count to such a degree as to entitle the FMHA Defendants to attorney's fees for the Florida RICO Counts. *Id.* at *3.

Therefore, construing the FMHA attorney's fees provision strictly and looking at the relief requested by Plaintiffs, Defendants have failed to demonstrate that Plaintiffs asserted claims to *enforce* provisions of the FMHA. As such, the undersigned finds that the FMHA does not allow for attorney's fees under the circumstances presented in this case.

### B. Attorney's Fees Under the FDUTPA

Under the FDUTPA, a prevailing party is entitled to reasonable attorney's fees and costs in civil litigation arising from a violation of the act. Fla. Stat. § 501.2105(1). Section 501.2105(1) allows the court to award attorney's fees to the prevailing party on a FDUTPA claim after judgment is entered and all appeals are exhausted. *Id.* The award of fees under the FDUTPA is discretionary. *Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*, No. 08-20395-CIV, 2009 WL 1956236, at *4 (S.D. Fla. July 7, 2009) (citing *Humane Soc. of Broward County, Inc. v. Florida Humane Soc.,* 951 So. 2d 966, 968 (Fla. 4th DCA 2007)).

The court should consider several factors when determining whether to exercise its discretion to award attorney's fees under FDUTPA. *Id.* (citations omitted). They are as follows:

1. the scope and history of the litigation;
2. the ability of the opposing party to satisfy an award of fees;
3. whether an award of fees against the opposing party would deter others from acting in similar circumstances;
4. the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
5. whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
6. whether the defense raised a defense mainly to frustrate or stall;
7. whether the claim was brought to resolve a significant legal question under FDUTPA law.

*Atmos Nation, LLC v. All Rise Record, Inc.*, No. 16-60032-civ, 2017 WL 3635114, at *3 (S.D. Fla July 6, 2017).

First, Defendants argue that they are entitled to an award of prevailing party fees based on a consideration of the various factors typically considered, including the history of the litigation. However, the FDUTPA claim was only pending for approximately four months (Doc. 36). Defendants entered into an agreement with the Plaintiff Association whereas Defendants were not required to respond to the motion for class certification (Doc. 31). The Plaintiff Association abandoned the FDUTPA claim when it filed the Amended Complaint, and the Individual Plaintiffs did not raise a FDUTPA claim (Doc. 44). Thus, the scope and history of this litigation weighs against an award of fees.

Next, Defendants do not address Plaintiffs' ability to satisfy an award. Rather, Defendants argue that "[i]nability to pay is no excuse" (Doc. 158, at 13). Plaintiffs argue that the Plaintiff Association's members would bear the expense of an award of fees, and because they are largely retired and living on fixed incomes, this would be very arduous (Doc. 153, at 17). Although Defendants' assertion

regarding the Court's consideration of Plaintiffs' ability to pay is correct under the FMHA or the Florida RICO attorney's fees provision, it is not so under the analysis for awarding attorney's fees pursuant to FDUTPA. Thus, Plaintiffs' assertion regarding their ability to pay is relevant. As such, Plaintiffs' inability to pay an award of fees weighs against an award of fees.

Defendants go on to address the remaining relevant factors together by making general allegations regarding the need for deterrence, the claim's frivolousness, and Plaintiffs' culpability or bad faith. Defendants argue that an award for fees is necessary to deter others from acting in similar circumstances and that the FDUTPA claim was so frivolous, unreasonable, or groundless that the Plaintiff Association abandoned it. According to Defendants, Defendants' attorneys have prevailed on the FDUTPA claim in "every related claim" (Doc. 124, at 12).

Defendants' reliance on the argument that the Plaintiff Association and others must be deterred from acting in similar circumstances because the Plaintiff Association should not have asserted the FDUTPA claim or voluntarily dismissed it based on "numerous orders, and notices of supplemental authority filed in this case," is not supported by the record. Defendants fail to identify any orders entered in other cases or notices of supplemental authority filed in this case that would have been pertinent to the Plaintiff Association's evaluation of the FDUTPA claim while it was still pending. Additionally, Defendants have failed to show how the Plaintiff Association's claim was frivolous. Notably, after dismissing the Plaintiff Association's FDUTPA claim, the Court found that it was "not persuaded" that the

claim was "meritless or frivolous" or that it "was intended to harass Defendants" (Doc. 61, at 3). Thus, these factors weigh against an award of attorney's fees.

Based on the foregoing, each of the factors that are pertinent here to determining whether Defendants are entitled to an award of attorney's fees pursuant to the FDUTPA weighs against an award or is neutral. Therefore, Defendants have not established entitlement to an award of attorney's fees pursuant to the FDUTPA.

### C. Attorney's Fees Under the Florida RICO Act

The Florida RICO Act provides that a defendant "shall be entitled to recover reasonable attorney's fees and costs . . . upon a finding that the claimant raised a claim that was without substantial fact or legal support." Fla. Stat. § 772.104(3).

In awarding fees to a defendant under section 772.104, "it is not necessary that the court find a complete absence of a justiciable issue of either law [or] fact. The trial court must only find that the claim lacked substantial fact or legal support." *Hartford Ins. Co. of the Midwest v. Miller,* 681 So. 2d 301, 302 (Fla. 3d DCA 1996) (citations omitted). Accordingly, "Florida courts consistently have held that defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with prejudice or a verdict was directed in the defendant's favor, and have explained that a defendant may still be entitled to fees on the RICO count even if the plaintiff ultimately prevails on other counts." *Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1331 (11th Cir. 1998) (citations omitted).

Defendants argue that the Florida RICO statutes provide an independent basis for fees even if they are not entitled to fees under the FMHA. Plaintiffs respond

that Defendants are not entitled to fees under the Florida RICO attorney's fees provision because summary judgment in Defendants' favor on a RICO claim for lack of standing does not equate to a finding that the claim lacked substantial factual or legal support (Doc. 153, at 11) (citing *Remova Pool Fence Co. v. Roth*, 647 So. 2d 1022, 1025 (Fla. 4th DCA 1994)). In *Remova*, the Court reversed the trial court's award of attorney's fees to defendants for several reasons including that the mere fact that plaintiff did not prevail on some of its claims due to a lack of standing did not equate to a finding that the claims were without substantial factual or legal support. *Remova Pool Fence Co.*, 647 So. 2d at 1025. The Court reasoned that the statutory language unambiguously required a finding that the claim was without substantial fact or legal support in order to be entitled to fees. *Id*. To hold otherwise would merely transform section 772.104 into a "prevailing party" attorney's fees provision. *Id*. Similarly, in *Gray v. Novell, Inc.*, the Court granted summary judgment in defendant's favor based on lack of standing and found that plaintiff's RICO claim lacked substantial factual basis. *Gray v. Novell, Inc.*, No. 8:06-cv-1950-VMC-TGW, 2010 WL 2593608, at *11 (M.D. Fla. Feb. 22, 2010), *report and recommendation adopted,* No. 8:06-cv-1950-VMC-TGW, 2010 WL 2612328 (M.D. Fla. June 28, 2010). In recommending an award of fees under Florida's RICO statute, the Court noted that the district court's finding that the plaintiff lacked standing was not recommended as a basis for the fee award because plaintiff asserted a good faith legal basis for his assertion that a racketeering injury was not necessary. *Id.* at n. 17.

Rather, the fee award was based on the fact that there was no substantial evidence to support the plaintiff's fraud and conspiracy theories. *Id.* at *11.

Unlike in *Remova* and similarly to *Gray*, the record in the instant case supports Defendants' assertion that Plaintiffs' RICO claims were without substantial legal or factual support. Plaintiffs' racketeering and fraud claims were based on Defendants purported fraudulent scheme involving the sale of the Schalamar Creek Park to Osprey Links in 2011, which resulted in higher pass-on ad valorem taxes for the mobile homeowners and forcing new homeowners to enter into rental agreements subject to the P6 Prospectus.

In Judge Moody's Order granting summary judgment in Defendants Richard Lee, David Eastman, Lutz, Bobo & Telfair, P.A., Randall Knapp, and Schalamar GP, Inc.'s favor, the Court found that the Individual Plaintiffs' RICO claims were "disjointed, lack[ed] factual support, and b[ore] no causal connection to the acts about which Individual Plaintiffs complain[ed]" (Doc. 103, at 8). The Court also found that the Individual Plaintiffs' accusations appeared to be based "on mere speculation that Individual Plaintiffs have been unable to factually support despite the opportunity to conduct discovery on these issues" (Doc. 103, at 8). The Court found that when the previous owners sold Schalamar Creek Park to Osprey Links, the ad valorem taxes on the park increased, resulting in higher pass-on ad valorem taxes (Doc 103, at 5). However, only one of the Individual Plaintiffs – Barb Griffin – owned a home in the park at the time (Doc. 103, at 5). The rest of the Individual Plaintiffs did not purchased homes until after the tax increase had occurred (Doc.

103, at 5). Therefore, the Individual Plaintiffs could not demonstrate an injury caused by the sale "because the Association would have been required to match the purchase price offered by Osprey Links, the Individual Plaintiffs have not and cannot show that their increased pass-on taxes would be different had no violation [of the Association's right of first refusal] occurred" (Doc. 121, at 5).[5] The Court reasoned that because the "Association would have had to match the purchase price offered by Osprey Links, the purchase by the Association would have resulted in the same increase in ad valorem taxes just the same" (Doc. 103, at 6).

Additionally, the Court found that because none of the Individual Plaintiffs were resale purchasers forced to accept the P6 Prospectus, they did not have an injury in fact (Doc. 121, at 6). Notably, "of the Individual Plaintiffs, only Griffin owned a home in the park until 2016. For her part, Griffin owns two homes in the park, neither of which are subject to the P6 Prospectus, so she was not forced to accept the P6 Prospectus when she purchased her homes" (Doc. 103, at 7). In fact, the "remaining Individual Plaintiffs purchased resale homes already subject to the P6 Prospectus. So, these Individual Plaintiffs were not forced to accept the P6 Prospectus since the homes they purchased were already subject to it" (Doc. 103, at 7). Therefore, the Individual Plaintiffs failed to assert facts that sufficiently supported their RICO claims.

---

[5] Judge Barber granted summary judgment in favor of the remaining Defendants in an Order relying, in part, on Judge Moody's previous summary judgment Orders (Doc. 121).

Given that Plaintiffs lacked factual support of their RICO claims, the undersigned recommends that Defendants be entitled to attorney's fees pursuant to section 772.104, Florida Statutes.

### D. Attorney's Fees Under Claims for Unjust Enrichment

Defendants fail to provide any basis for an award of attorney's fees for Plaintiffs' unjust enrichment claim—as alleged in the initial Complaint—other than entitlement under the FMHA statute. For the reasons discussed above, Defendants are not entitled to attorney's fees for the unjust enrichment claim pursuant to the FHMA statute.[6]

### E. Costs Pursuant to Rule 54 and 28 U.S.C. § 1920

Defendants also seek costs in the amount of $21,634.22 pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920. Rule 54(d)(1) provides that costs shall be allowed as a matter of course to a prevailing party unless the court directs otherwise. Fed. R. Civ. P. 54(d)(1). The rule, however, does not permit "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964). Instead, costs awarded under Rule 54(d)(1) are limited to the list of items set forth in 28 U.S.C. § 1920 and related statutes. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Notably, costs are "limited to relatively minor, incidental expenses" as defined by 28 U.S.C. § 1920. *Kouichi*

---

[6] Defendants do not move for entitlement of attorney's fees for prevailing on the ADA claim.

18

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). A court may not award costs beyond the limited scope set by Congress in 28 U.S.C. § 1920. *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10-cv-891-J-37JBT, 2012 WL 2913179, at *2 (M.D. Fla. June 13, 2012); *cf. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987), *superseded on other grounds by* 42 U.S.C. § 1988(c) (finding that 28 U.S.C. § 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the discretionary authority granted in Rule 54(d)). Specifically, pursuant to 28 U.S.C. § 1920, the following may be taxed as costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under [28 U.S.C. § 1923]; [and]
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

The party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses. *Loranger v. Stierheim, et al.*, 10 F.3d 776, 784 (11th Cir. 1994). Failing to provide "sufficient detail or supporting documentation" for taxing costs can lead to

a denial of them. *See Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, No. 6:14-cv-307-GJK, 2016 WL 7325544, at *2 (M.D. Fla. Aug. 31, 2016).

As noted, Defendants seek to recover $21,634.22 in taxable costs (Docs. 124 & 158). Specifically, Defendants seek to recover costs for the following: (1) service of process in connection with depositions totaling $534.00; (2) witness fee totaling $40.00; and (3) printed or electronically recorded transcripts necessarily obtained for use in the case totaling $21,060.22 (Doc. 158).

First, Defendants' request for $534.00 in service of process fees is excessive. Although in the context of costs awarded under § 1920, courts can tax costs for a private process server's fee, the fee should not exceed the statutory maximum authorized for service by the U.S. Marshals Service. *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000) (holding that private process server fees may be taxed pursuant to 28 U.S.C. § 1920(1) so long as such fees do not exceed the statutory fees authorized in 28 U.S.C. § 1921). According to regulations proscribed by the Attorney General, the U.S. Marshals Service may charge $65 per hour for each item served. 28 U.S.C. § 1921(b); 28 C.F.R. § 0.114(a)(3). Based on Defendants Verified Motion for Award of Attorney's Fees and Costs, Defendants incurred the following service of process charges: Serve Legal Process, Inc.- Service of Process- Service on Daniel Perry $234.00; Diligent Legal Services- Service of Process- Schalamar Creek v. Adler $150.00; and Diligent Legal Services- Service of Process- Service on Nick Van Lith $150.00 (Doc. 124, Ex. A, at 14). However, the invoice submitted by Defendants in support of the request provides no explanation as to why any costs

above the $65.00 per hour charge allowable under 28 C.F.R. § 0.114(a)(3) should be awarded. *See Cont'l 332 Fund, LLC v. Hilz*, No. 2:17-cv-41-SPC-MRM, 2020 WL 6595061, at *3 (M.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, 2:17-cv-41-SPC-MRM, 2020 WL 6591192 (M.D. Fla. Nov. 10, 2020) (denying the movants' request for service of process fees because they did not provide information to justify why and how the costs were necessarily incurred); *Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-cv-557-EAJ, 2015 WL 12839237, at *8 (M.D. Fla. June 10, 2015), *report and recommendation adopted*, 8:12-cv-557-EAJ, 2016 WL 355490 (M.D. Fla. Jan. 29, 2016) ("any service of process without supporting documentation of time spent and additional costs . . . is limited to recovery of $65.00."). Therefore, the undersigned recommends Defendants be allowed to supplement their petition for taxation of service fees when they file their supplemental motion on the attorney's fees amount.

Next, Defendants' request for $40.00 as a witness fee is recoverable. Witness fees are recoverable as costs under § 1920(3), including fees for attendance at a deposition. Another statute, 28 U.S.C. § 1821, specifically prescribes the amounts allowable in connection with the appearance of witnesses at depositions and trials. *See* 28 U.S.C. § 1821(a)(1). It provides in pertinent part "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." 28 U.S.C. § 1821(b). Therefore, it is appropriate that Defendants be allowed to tax $40.00 for a witness fee.

Finally, Defendants' request of $21,060.22 in service fees and transcript costs for 27 depositions, hearings, and the transcription of Plaintiffs' counsel's presentation to the Association is not clearly supported by the record. The costs for depositions and deposition transcripts are generally recoverable if they were "necessarily obtained for use in the case." *Am. Cas. Co. of Reading, Pennsylvania v. Health Care Indem., Inc.*, No. 8:07-cv-0421- EAJ, 2009 WL 1456429, at *2 (M.D. Fla. May 22, 2009) (citing *W&O, Inc.,* 213 F.3d at 621). "Costs are generally unrecoverable if they were incurred merely for convenience or for investigative purposes." *Harrison v. Belk, Inc.*, 740 F. App'x 708 (11th Cir. 2018) (citing *W&O, Inc.*, 213 F.3d at 620). The Eleventh Circuit has held in this regard that "[w]here a party notices a deposition to be recorded by both stenographic and non-stenographic means, and no objection is raised at that time as to the method of recordation, pursuant to Fed. R. Civ. P. 26(c), a court can award the cost of conducting the deposition in the manner noticed." *Watson v. Lake Cty.*, 492 F. App'x 991, 997 (11th Cir. 2012) (citing *Morrison v. Reichhold Chems., Inc.,* 97 F.3d 460, 464-65 (11th Cir. 1996) (holding that costs for a video deposition are properly taxable under 28 U.S.C. § 1920)). Nonetheless, the prevailing party must still explain the necessity of obtaining both regular transcripts and videotaped copies for these costs to be taxable. *See Morrison*, 97 F.3d at 465 (noting that the prevailing party failed to explain why it was necessary to obtain video copies for use in the case); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, No. 8:15-cv-990-T-23TGW, 2018 WL 3769953, at *1 (M.D. Fla. Aug. 9, 2018) ("Although *Morrison . . .* permits taxing the cost of a

videotaped deposition, under *Morrison* recovering the cost of a videotaped deposition requires showing the necessity for a videotape. [The movant], who fails to explain cogently the necessity in this action for both a typed copy and a videotaped copy of a deposition, can recover only the cost of a typed deposition."). Defendants argue that the transcripts from these depositions were heavily used throughout the defense of the action and that specific reference was made to the testimony of these deponent throughout the case and relied on by both parties (Doc. 158, at 14). However, Defendants fail to explain the deposition charges that appear in the "Costs and Expenses" section of the Statement of Account or why videotaped copies were necessary (*see* Doc. 124, Ex. A). For instance, there are multiple charges for the deposition of James Driskell, including a videotaped deposition, without explanation as to the multiple charges or why a videotape was necessary (*see* Doc. 124, Ex. A, at 28, 30) *see also Travelers Indem. Co. of Conn. v. Attorney's Title Ins. Fund, Inc.*, No. 2:13-cv-670-CM, 2019 WL 359862, at *4 (M.D. Fla. Jan. 14, 2019), *report and recommendation adopted in part*, No. 2:13-cv-670-CM, 2019 WL 354881 (M.D. Fla. Jan. 29, 2019) (citing cases).

Notably, the added cost of all the transcript charges that appear on the Statement of Account (Doc. 124, Ex. A) is greater than the total requested by Defendants. However, it is impossible for the undersigned to parse out what line items Defendants are seeking reimbursement for. Based on the foregoing, the undersigned recommends denying without prejudice Defendant's request to tax costs for printed or electronically recorded transcripts necessarily obtained for use

in the case. Rather than awarding Defendants their costs in piecemeal judgments, the undersigned recommends granting Defendants leave to supplement their motion for costs with the appropriate explanation and itemization of the service and transcript costs requested upon Defendants' supplemental motion on the amount of attorney's fees requested.

Accordingly, it is hereby

RECOMMENDED:

1.      Defendants' Supplemental Motion for Award of Attorney's Fees and Costs (Doc. 158) be GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE as follows:

a.      Defendants are entitled to attorney's fees pursuant to section 772.104(3), Florida Statutes;

b.      Defendants be allowed to supplement their petition for taxation of costs upon filing their supplemental motion for amount of attorney's fees.

IT IS SO REPORTED in Tampa, Florida, on this 7th day of December, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:    Hon. Thomas P. Barber
       Counsel of Record