IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA; TAMPA DIVISION

SCHALAMAR CREEK MOBILE
HOMEOWNER'S ASSOCIATION, INC.
JSM-AEP
on behalf of the homeowner-members in its
representative capacity and on behalf of
themselves and all other similarly situated,

     Plaintiffs,

vs.

STEVEN ADLER, *et. al.,*

     Defendants.

_____/

Case No. 8:19-cv-00291-

## SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND COSTS

Pursuant to Local Rule 7.01   Defendants move for liquidation of their attorneys' fees request. In support Defendants submit the following Exhibits:

    A.    The billing statements from counsel Lutz, Bobo, & Telfair, P.A. and Sivyer Barlow Watson & Haughey, P.A., counsel for Defendants;

    B.    A Declaration of Joseph A. Geary In Support Of Defendants'' Verified Motion For Award Of Attorneys' Fees and Costs (the "Expert Declaration"); and,

    C.    Transcript of presentation by attorney Daniel W. Perry.

**I. Nature Of Action; Must Win For Defendants**.

This was a must win action filed against five (5) distinct groups of Defendants:

    1.    The Northwestern Mutual Life Insurance Company, and its ownership affiliate, Osprey Links, LLC;

    2. A property management Company (Murex Properties, LLC and associated individuals, its principal, Mr. Adler and employees, Ms. Demarco, Mr. Provost, Ms. Newkirk and former employee, Mr. Cook);

1

   3. The former park owner Schalamar GP. Inc., and two of its partners, individually, Mr. Knapp and his sister Julie Jennings;

   4. The outside counsel for the park, David Eastman and Richard Lee, individually and their law firm Lutz Bobo & Telfair, P.A.; and

   5. The trade organization, The Florida Manufactured Housing Association, Inc.

The claims were serious. The principal allegations were RICO claims based upon extortion and mail/wire fraud (i.e. criminal predicate acts). The action was a model of "over pleading" intended to cause or threaten reputational damage, as Plaintiffs' counsel touted in presentations before rank-and-file homeowners:

> My name is Daniel Perry. I'm an attorney from Orlando.· I have enjoyed for the last 25 years the prospect of representing only mobile home owners in the State of Florida.· At any given time I've represented over 300 homeowner associations. … First off, let's me just be honest and tell you that lawyers fantasize about suing insurance companies.· Okay.· I can't tell you how many times in the course of my day *I've licked my lips* at the thought of suing your park owner.· Okay.· I'm serious when I say that.  I have over the last five years or so made a considerable investment in educating myself and preparing civil RICO claims against developers. (p 12) One advantage of civil racketeering … if you prevail in court with a stroke with the pen the judge will triple your damages.  I think Northwest would be insane to not settle this case.· I think they would be literally out of their ever-loving mind.· First off, as an insurance company they don't ever want to be in front of a jury.· That would be a disaster for them.· Okay.· Secondarily, under the circumstances they don't want to be in front of a jury having to defend exploiting senior citizens.· Finally, they don't want to be in front of a jury being accused of civil racketeering because, one thing *I forgot to mention is that if a judge agrees that you have -- that they have committed civil racketeering, the judge can order them to cease and desist from this area of the practice.· So they could literally say Northwest, you may not ever own another piece of real property again.· That is huge.*· And so I would tell you that in the Tampa case I sued six entities and four defendants, individual defendants.· Okay.· Each one of the individual defendants were *millionaires*.· The lawyer, the subdivision developer, the

codeveloper, and the son of the original developer, all three of them got sued and the lawyer got sued.· Okay.· And I -- *frankly, I knew the day I filed this lawsuit that we won it, because I knew that none* of these people wanted to be sitting in front of a jury accused of exploiting senior citizens. (pg. 26-7) [Transcript of presentation attached as Ex. C; [Emphasis supplied]

The allegations were baseless from the start and included outlandish assertions. The spurious nature of the claim is exampled by the ridiculous allegation that the park's management company, a law firm, two lawyers, and a trade organization, "operated and managed the affairs" of the Florida legislature and the Florida Department of Business and Professional Regulation "through a pattern of racketeering and criminal activity." (Doc. 2 at ¶ 123)(emphasis added). Who even suggests such a thing?

With such allegations, the case was a must win for the Defendants and there was no chance of settlement. Importantly for the purposes of this motion, each Defendant would have had the right to independent counsel which would have increased the attorneys' fees for the Defendants exponentially. Instead, the two firms involved in this application represented all Defendants, except the Florida Manufactured Housing Association, Inc. This joint representation unquestionably lessened the attorneys' fees which Defendant could have incurred.

**II. The Monetary Recovery Is Not The Whole Picture**.

While Defendants seek to recover some of their losses caused by these frivolous claims, other material considerations exist. Plaintiffs' counsel, attorney, Perry attempted to craft a cottage industry suing park owners, and their counsel for the most serious of offenses. This is the first of the claims, but far from the last. Since February 2019, attorney Perry has filed claims alleging the same or similar actions against park owners, their employees and, in most cases, their attorneys[1]. Eight of these claims have been resolved; six resulted in attorneys' fees against the plaintiffs and/or their homeowners associations with applications for fees pending for the other two actions.

---

[1] *Crystal Lake Community Association, Inc. v. Patrick Zilis*, et al; USDC, Middle District Tampa Division, Case No: 8:21-cv-151; *Coquina Crossing Homeowners Association, Inc., v. MHC Operating Limited Partnership, et al*; USDC, Middle District Jacksonville Division, Case No: 3:21-cv-84; *Harbor View Mobile Homeowner's Association, Inc., v. MHC Operating Limited Partnership*, et al, USDC, Middle District Tampa Division, Case No: 8:21-cv-1143; *Holiday Haven Homeowners, Inc., v. Vincent Taranto*, et al, USDC Middle District Orlando Division, Case No: 6:21-cv-174; *Swiss Village, Inc. v. Lawrence W. Maxwell*, USDC Middle District Tampa Division, Case No: 8:21-cv-153; *Maralago Cay Homeowners Association, Inc., v. MHC Operating Limited Partnership*, et al, USDC Southern District West Palm Beach Division, Case No: 9:21- cv-80049-DMM; *Beacon Hill Colony Homeowners Association, Inc., v. Zilis*, et al, Tenth Judicial Circuit in and for Polk County, Case No: 2021 CA 2517; *Sarasota Winds North II, Inc. v. Equity Lifestyle Properties, Inc.,* Twelfth Judicial Circuit in and for Sarasota County, Case No: 2021 CA 3904; *Royal Palm Village Residents, Inc. v. Monica Slider*, et al, USDC Middle District Tampa Division, Case No: 8:19-cv-874 pending as *Royal Palm Village Residents, Inc. v. Monica Slider, et al*, USCA 11th Circuit Case No: 21-13789; and *Vista Del Lago Homeowners Association, inc. v. Leary, et al*, Circuit Court, Orange County Fl, Case No. 2020-CA-012804-O.

In part, Defendants seek fees to stop the evolution of these baseless lawsuits filed by attorney Perry.

### III. Rule 7.01 Compliance

(1) <u>The Meet and Confer Effort</u>

Defendants sent their account statements to Plaintiffs' counsel on January 26, 2022.

On Thursday March 3, 2022, a status conference was held before Magistrate Porcelli. As the minute order reflects, the parties discussed this supplemental motion for fees due on March 7. Also as discussed, Defendants indicated that their expert report would be supplied to attorney Perry that day. The report was emailed to Mr. Perry with an invitation to meet-and-confer. A follow-up request was sent later in the day and Friday morning.

At 4:01 on the day this motion was required to be filed, Mr. Perry emailed the following:

> Mr. Bobo:
> As we discussed earlier today I do not have a copy of your Motion or verification for the near 700 separate entries under 7.01(c)(4)(E).
>
> As we discussed, I have broad objection to your fees as excessive (unreasonableness) in light of the resolution of the case on the issue of standing and the limited nature of the claims ordered by the Magistrate Judge. There are numerous instances where there has been excessive, duplicative, clerical, or otherwise unreasonable charges. There has been no effort to address the indefiniteness of many entries.

> There is no way I will be able to finish my review before the close of business today - which is when you wish to file your supplemental motion.
>
> I do not, however, contest the hourly rate for the services of the timekeepers.
>
> As I am still in the dark as to what your motion explains and verifies, I do not oppose an extension of time within which you and I could further confer.
>
> Daniel W. Perry
> 4767 New Broad St #1007
> Orlando, FL 32814

From the telephone conference discussing the application, Plaintiffs' counsel's overall position is that defense counsel was "overly aggressive" in defending the claim. The nature of the action demanded an aggressive defense.

(2) <u>The resolved and Unresolved Issues</u>

Defendants received no responses to the individual time entries which were sent to Plaintiffs' counsel more than five weeks ago.

(3) The timekeeper's identity, experience, and qualification.

**Mahlon H. Barlow** was admitted to the Florida Bar in 1990 and has practiced as a commercial litigator since that time. He started at the Bush Ross law firm, before starting his own firm Sivyer Barlow & Watson, P.A. In *Bahrakis, et al., v. Zimmerman, et al.,* Case No. 8:19-cv-2948-T-24-SPF, U.S. District Court for the Middle District of Florida (Tampa Division) at Order (Doc. 41) Senior Judge Bucklew found *$460.00 per hour* to be a reasonable hourly rate for Mr. Barlow. In *Maralago Cay Homeowners Association, Inc. v. MHC Operating Limited Partnership*, et al Case No. 21-cv-80049-

6

DMM, U.S. District Court for the Southern District of Florida (West Palm Beach Division) at Order (Doc. 85) Senior Judge Middlebrooks also found that a rate of $450-460 was reasonable for Mr. Barlow.

**J. Allen Bobo** was admitted to the Florida Bar and the Georgia Bar Association in 1982 and has practiced as a commercial litigator, primarily representing manufactured housing community owners and operator since that time. He started at the Holland & Knight law firm, before founding his own firm Lutz, Bobo & Telfair, P.A. In *Bahrakis, et al., v. Zimmerman, et al.,* Case No. 8:19-cv-2948-T-24-SPF, U.S. District Court for the Middle District of Florida (Tampa Division) at Order (Doc. 41) Senior Judge Bucklew found *$400.00 per hour* to be a reasonable hourly rate for Mr. Bobo. In *Maralago Cay Homeowners Association, Inc. v. MHC Operating Limited Partnership*, et al Case No. 21-cv-80049-DMM, U.S. District Court for the Southern District of Florida (West Palm Beach Division) at Order (Doc. 85) Senior Judge Middlebrooks also found that a rate of $425 was reasonable for Mr. Bobo.

**David Eastman** was admitted to the Florida Bar 1984 and has practiced as a commercial litigator, primarily representing manufactured housing community owners and operator since that time. He started at the Parker Skelding law firm, before moving to Lutz, Bobo & Telfair, P.A. Mr. Eastman serves as General Counsel for The Florida Manufactured Housing Association and the Florida Campground Association, the trade organizations for manufactured housing and recreational

vehicle parks in Florida. He has extensive experience in trial, appellate, legislative and administrative actions involving these communities. His rate is $450 per hour.

**Jody B. Gabel** was admitted to the Florida Bar 1994 and has practiced as a commercial litigator, primarily representing manufactured housing community owners and operator since that time. Her rate is $350 per hour which reflects her focus in this area of law.

**Ali V. Mirghahari** – Mr. Mirghahari's hourly rate of $275.00 per hour has been found reasonable by Judge Bucklew in *Bahrakis*, *supra*. Given his experience in litigating the many cases brought by Plaintiffs' counsel against mobile homes and the Lutz-Bobo firm, this rate is reasonable

(4) The timekeeper's requested hours

The timekeeper's hours are stated in the attached accounts which are verified by lead counsel.

(5) Lead counsel's verification that counsel charges the rate requested, has reviewed each task, and has removed each charge for a task that is excessive, duplicative, clerical, or otherwise unreasonable.

As lead counsel:

(i) I make the indicated verification;
(ii) *Both firms representing Defendants waived the right to seek fees from the successful appeal;* and,
(iii) Instructed the expert verifying the fees to be as conservative as possible in verifying the reasonableness of the fees.

(6) The timekeeper's requested rates.

      Shown in 3(A) above and in the Expert's report. Mr. Perry did not object to counsel's rates.

(6) Evidence showing the reasonableness of the rates based on the prevailing market rate in the division in which the action is filed for similar services by a lawyer of comparable skill, experience, and reputation.

See, Expert Declaration attached as Exhibit B.

(F) Costs.

Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920. Rule 54(d)(1) provides that costs shall be allowed as a matter of course to a prevailing party unless the court directs otherwise. Fed. R. Civ. P. 54(d)(1).

Defendants have stripped down their cost reimbursement requests to only deposition transcripts of Plaintiffs and officers and directors of the Plaintiff homeowners' association. Pursuant to 28 U.S.C. § 1920, the fees for printed or electronically recorded transcripts necessarily obtained for use in the case are recoverable. The costs associated with video depositions are not sought and have been removed. The costs of printed or electronically recorded transcripts necessarily obtained for use in the case totaled $9,365.20. The deposition of James Driskill was taken twice, once individually and later as a Rule 30(b)(6) representative of the Plaintiff homeowners' association. Only the costs of the written transcripts are requested.

**Respectfully Submitted,**
**LUTZ, BOBO & TELFAIR, P.A.**

*J. Allen Bobo*
_____
J. Allen Bobo
Florida Bar No. 0356980
2 North Tamiami Trail, Suite 500
Sarasota, FL 34236-5575
Telephone: 941-951-1800
877-951-1800 (toll-free)
Facsimile: 941-366-1603
E: jabobo@lutzbobo.com
 ahodgins@lutzbobo.com
*Co-Counsel for Defendants*

/s/ Mahlon Barlow
_____
Mahlon Barlow
Florida Bar No. 871117
mbarlow@sbwlegal.com
mhbassistant@sbwlegal.com
Nicholas R. Consalvo
nconsalvo@sbwhlegal.com
ddevlin@sbwlegal.com
SIVYER BARLOW & WATSON, P.A.
Truist Place
401 E. Jackson Street, Suite 2225
Tampa, FL 33602
Main: (813) 221-4242
Fax: (813) 227-8598
*Co-Counsel for Defendants*

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on March 7th, 2022, I electronically filed the foregoing document with the Clerk of Court via CM/ECF, which will send Notice of Electronic Filing to counsel or parties authorized to receive electronic filings in this case.

/s/ *J. Allen Bobo*
J. Allen Bobo